The Illinois and St. Louis Railroad·and Coal Company

*v.*

Ellen C. Switzer *et al.*

*Filed at Mt. Vernon June 12; 1886.*

1. Eminent domain—*measure of damages—destruction of pond supplying water to a steam mill—evidence to show other sources of supply.* In a proceeding to condemn a strip of land for a railroad track, which crossed a pond supplying the land owner's steam mill with water, on the question of damages to the mill property not taken, the defendant gave estimates on the basis that the pond would be destroyed as a source of supply of water for the mill, and there would be no other means of such supply. The petitioner then offered to show that a certain water works company would furnish the mill regularly with all the water it might require, at a less cost than that of pumping from the pond, and also that a creek flowing nearer the mill than the pond had a capacity to furnish better water, and an abundance, for the use of the mill,—which the court refused to admit: *Held,* that the court erred in excluding the evidence.

2. Same—*evidence of plans for constructing the road—on question of damages—preserving.* In a proceeding to condemn land for a right of way, it is competent, on· the question of damages, for the railroad company to show the plan of construction of its road over the premises sought to be taken. But when such plan will materially affect the question of damages, the plan should be presented, and preserved in the records of the court, so that if there should be a departure from such plan, to the defendant's damage, he may have his remedy for any increased damages resulting from such departure.

Appeal from the County Court of St. Clair county; the Hon. W. J. Underwood, Judge; presiding.

Mr. G. & G. A. Koerner, for the appellant:

The inquiry before the jury was, first, to ascertain the compensation to be paid for the land actually taken; and second, the damages to the· remaining property not taken.

Various witnesses, called by appellees, testified as to the damages that the mill property would sustain if the railroad company should destroy the pond, and there was no other water supply. They all substantially agreed that if the pond

were not destroyed there would be no damage. The theory of appellees was, that if the company obtained the right of way it might fill up, and thus cut the pond into two parts, separating the mill from the larger part of it, which would then be no longer accessible. A mill without water, it was urged, was of no use. To meet this view of the case, the petitioner showed, or attempted to show, first, that it would not interfere with the water supply of the mill; second, that the mill was not dependent upon this water supply, but could have cheaper and better water from other sources. In support of the first of the above propositions, it was shown that the railroad company, under a license from the owner, had been in possession and had the use of this property for more than fifteen years; that it crossed the pond on trestles, and did not in the least interfere with the pond. The question was then asked of the engineer in charge of the construction, how the company intended to cross the pond; but the court excluded the question. This, we think, was error. The company has the right to explain its plans and purposes, and will be bound to make the construction conform thereto. *Railroad Co.* v. *Kidder*, 21 Ill. 134; *Railroad Co.* v. *Birkett*, 62 id. 335.

If it was to be assumed that the mill would be damaged by impairing its water supply, the extent of that damage should certainly be measured by the incurred expense, if any, of obtaining it from other sources.

Messrs. WILDERMAN & HAMILL, for the appellees:

The true test as to damages to be paid for land taken for public use, is its market value for any purpose to which it is adapted or may be applied. *Railroad Co.* v. *Jacobs*, 110 Ill. 414; *Railway Co.* v. *Walsh*, 106 id. 253.

Where property has no general market value, from the fact of its being used as a mill pond, and devoted exclusively to a special use, then its value is to be estimated with reference to such use. *Railway Co.* v. *Railroad Co.* 100 Ill. 21.

The appraisement of damages in a case of condemnation, embraces all past, present and future damages which the improvement may thereafter reasonably produce.   Mills on Eminent Domain, sec. 216; *Railway Co.* v. *Smith,* 111 Ill. 371; *Railroad Co.* v. *Railroad Co.* 67 id. 142; *Railroad Co.* v. *Henry,* 79 id. 290.

Had the petitioner entered into a binding obligation, conditioned not to construct an embankment through the pond, it would have been admitted in evidence, and defendant would not have claimed damages to the property not taken.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The petition in this case was filed in vacation, in the county court of St. Clair county, by the Illinois and St. Louis Railroad and Coal Company, for condemnation of a strip of land one hundred feet wide, containing one and four one-hundredths acre, for right of way of petitioner.   The tract of land of which this strip forms a part, contains about eleven acres, on which a flouring mill is situated.   The strip of land is mostly across a pond, from which the water required for steam purposes in the mill is derived.   The report of the jury allowed $400 as the value of the land to be taken, and $2185 as damages to the land not taken, upon which finding the court rendered judgment, and the petitioner appealed.

It is the finding and judgment in respect of damages that is complained of.   The damage which was sought to be shown by the evidence, was in cutting off the water supply for the mill from the pond.   It appeared that the railroad company, under license from the former deceased owner, had been in possession and had the use of the property for some ten or fifteen years; that it crossed the pond on trestles, and did not interfere with the pond in supplying water.

At the trial, witnesses were introduced, on the part of the defendants, who gave testimony that if the railroad company

should build a solid embankment of earth across the pond to place its track upon, it would destroy the pond as a source of water supply for the mill, and that if the pond were destroyed, and there was no other means of getting water, the damage to the mill would be great,—giving their estimates of the amount, based on that hypothesis. In rebuttal of such testimony, the petitioner offered to prove that the Belleville water works can furnish, and agree to furnish, water regularly to the mill, and all it may require, at a cost which will be less than the cost of pumping the water from this pond; also, that Richland creek, which flows nearer to the mill than the pond is, has a capacity to furnish better water, and an abundance, for the use of the mill. The court excluded the testimony. There was, in this, manifest error, for which the judgment must be reversed. There having been an estimate of damages made on the basis that the pond would be destroyed as a source of supply of water for the mill, and that there would be no other means of such supply, it obviously should have been permitted the petitioner to show there would be other sources of water supply,—not, as is supposed by appellees' counsel, for the purpose of showing there would be no damage, but for the purpose of affecting the amount of damage, the amount of the estimates of damages by appellees' witnesses having been based upon the supposition that there would be no other means of supplying the mill with water.

There was evidence that to cross the pond on trestle work would cause no, or but little, damage in injuring the pond, and that an embankment of earth across the pond, with a culvert to allow communication between the two sides, would not interfere with the capacity of the pond to supply water to the mill. The question was asked by the petitioner, of a witness, to the effect, how the company intended to cross the pond, and the court excluded the question. And the court gave this instruction to the jury:

"The court instructs you that the verbal statements of the employes and officers of the railroad company, even when made under oath, that they do not intend to make an embankment of earth or other material across said mill pond, for said railroad tracks, will not legally bind said railroad company, its successors and assigns, not to make said embankment. The only way that said railroad company can legally bind itself and its successors and assigns not to build an embankment of earth or other material across said pond for its track, is for said company to make, in writing, and sign and file with the papers in this case, a stipulation or covenant running with the land, that said railroad company and its successors and assigns will never make an embankment across said pond, but will perpetually maintain its tracks on trestle work, or put a bridge or culvert across said pond."

Whether there was error in the rulings in this regard, it is unnecessary for the decision of this case to determine. It may be proper, in view of another trial, to say it was undoubtedly competent for the railroad company to show the plan of construction of its road over the premises in question; but where, as here, the particular plan of construction would materially affect the question of damages, the plan should be presented, and preserved in the records of the court, so that it might thereafter be known upon what plan of construction the damages were assessed, and if there should be departure from the plan, to the defendants' damage, they might have their remedy for any such increased damage.

The judgment will be reversed, and the cause remanded.

*Judgment reversed.*