CITY OF ST. LOUIS v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY et al.; NATIONAL LEAD COMPANY, Appellant.

Division Two, July 27, 1917.

1. **APPELLATE PRACTICE: Weight of Evidence: Value of Property Taken.** In a condemnation proceeding, where substantial evidence of the value of the property taken was offered by both sides, the appellate court is powerless to weigh the evidence and say that the amount of damage found by the trial court sitting as a jury, who made a special finding of facts, was inadequate.

2. **CONDEMNATION: Measure of Damage: Compensation.** The Constitution and statutes contemplate that the owner of private property taken for public use must be fully compensated therefor. They do not contemplate speculation, but they do require that he be made whole.

3. ————: ————: **Accuracy of Estimate.** Any estimate of the damage done to a whole factory plant by taking a parcel thereof is necessarily a guess. An absolute accurate valuation cannot be even approximated.

4. ——: ——: **Replacing. Part Taken by Purchase of Other Land.** Damage for land taken can be paid only in money; nor can the owner be compelled to exchange the part to be taken for other adjoining parcels which if utilized at purchasable prices would curtail or eliminate the damage. But where only a part of a factory plant is taken and it is claimed the taking of that part destroys the whole plant for its then uses and that the measure of damages is the value of the entire plant, it is competent for the condemnor to show, in diminution of the damage, that there is adjoining property, purchasable at a fair price, which, if utilized in connection with so much of the plant as is not taken, will result in as adequate and valuable a plant as the existing plant.

5. ——: ——: **The Words "Or Damaged."** The words "or damaged" placed in the Constitution of 1875 after the word "taken" broadened the field of consequential damages where there is no physical taking of the owner's property; but they do not have the effect of allowing to an owner whose property is actually taken any greater compensation than he could recover without those words, for both before they were placed in the Constitution and since the owner is entitled to be compensated for the value of the property taken and the amount of the damage to the property not taken. Consequently the rule announced in Hannibal Bridge Co. v. Schaubacher, 57 Mo. 1. c. 588, decided prior to the adoption of the Constitution of 1875, is applicable.

6. ——: ——: **Taking Part of Factory: Depreciation in Value of Whole.** Where the taking of a part of a tract devoted to a special use results in a depreciation of the plant for that use, the measure of depreciation is the sum required to be expended in order to rehabilitate the property for such special use, if such rehabilitation is practicable; and in measuring the amount of depreciation to which the part damaged but not physically taken has been subjected, if no available property is owned by him whose part is taken, the price at which other adjacent land, equally as valuable intrinsically, as convenient, as economical in use and as accessible, and which can be bought and used in connection with the part not taken, may be shown.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

AFFIRMED.

*Boyle & Priest* and *T. E. Francis* for appellant.

(1) Where property is taken for public use its value should be paid; when not taken, but only injured,

its depreciation in value only should be allowed. Railroad v. McGrew, 104 Mo. 300; Railroad v. George, 145 Mo. 46; Doyle v. Railroad, 113 Mo. 288. (2) The value of buildings or other improvements located on land taken for public use should be included in the award of damages. City v. Morse, 105 Mo. 518. (3) Where two tracts of land, divided by a public street, are used for a single purpose, and one or part of one of such tracts is condemned and taken for public use, and the other tract is damaged or its market value is depreciated by such taking, damages should be awarded the owner therefor. 10 Am. & Eng. Ency. Law, 1166; Bridge Co. v. Schaubacher, 57 Mo. 582; Railroad v. McGrew, 104 Mo. 282; Elevator Co. v. Railroad, 135 Mo. 353; Railroad v. Nercross, 137 Mo. 415; City v. Brown, 155 Mo. 545; Railroad v. Brick Co., 198 Mo. 698; Drainage District v. Dawson, 243 Ill. 175; Railroad v. Drummond, 205 Mo. 167; Lough v. Railroad, 116 Iowa, 31; Shirley v. Railroad, 121 Ky. 87. (4) In such a case, if the part taken is of greater value in connection with the whole than as a separate parcel, the measure of damages for the part taken is the fair cash value of the part taken considered as a part of the whole. Railroad v. Humiston, 208 Ill. 100. (5) Where property taken for public use has been improved for carrying on a special business, and such business enhances the value of the site, this should be considered in awarding damages to the owner. 10 Am. & Eng. Ency. Law, p. 1161; Railroad v. Jacobs, 110 Ill. 414; Belting Co. v. Boston, 183 Mass. 254; Railroad v. Chicago, 172 Ill. 198; Railroad v. Chicago, 100 Ill. 21; King v. Railroad, 20 N. W. (Minn.) 135; Telegraph Co. v. Railroad, 202 Mo. 688; Railroad v. Brick Co., 198 Mo. 711. (6) While the owner of land taken for public use is required to minimize the damages by using his property in the most advantageous way, he is not required to invest large sums in the acquisition of other property to take the place of that condemned, in order to minimize the damages. Railroad v. Brick Co., 198 Mo. 714; Bridge Co. v. Schaubacher, 57 Mo. 582; Railroad v. McGrew, 104 Mo. 299.

*Chas. H. Daues* and *H. A. Hamilton* for respondent.

(1) The finding of the court stands as a special verdict and will not be disturbed where there is substantial evidence to support the same. Leavitt v. Taylor, 163 Mo. 170; Walther v. Null, 233 Mo. 110. (2) On a mere question of value depending on conflicting evidence, this court will not interfere with the findings of the commissioners and the circuit court. St. Louis v. Brown, 155 Mo. 567; St. Louis v. Abeln, 170 Mo. 324. (3) Where two tracts of land, divided by a public street, are used for a single purpose, and a part of one of the tracts is taken for public purposes, the owner is entitled to damages for the depreciation in the value of the other tract, but he must minimize the damages by adjusting himself to the changed condition. The possibility of obtaining other land in the neighborhood for the same purpose must be considered in estimating appellant's damage. Bridge Co. v. Schaubacher, 57 Mo. 582; Railroad v. McGrew, 104 Mo. 282; Elevator Co. v. Railroad, 135 Mo. 353; St. Louis v. Brown, 155 Mo. 545; Railroad v. Brick Co., 198 Mo. 698; Railway Co. v. Switzer, 117 Ill. 399; Railway Co. v. Brugger, 24 Tex. Civ. App. 367; Sutherland on Damages (3 Ed.), sec. 1067, p. 3122; Sedgwick on Damages (8 Ed.), sec. 1172, p. 437.

FARIS, J.—This action was commenced by the city of St. Louis for the purpose of condemning the property of appellant, the National Lead Company, and others, as a right-of-way for the western approach to a bridge across the Mississippi River, called locally the Municipal or Free Bridge. The commissioners appointed by the court awarded to appellant for the land taken and for consequential damages the sum of $67,100. Exceptions were promptly filed by appellant and upon a trial by the court sitting as a jury, the court found for appellant exactly the amount of damages which had been given to it by the commissioners. Thereupon appellant took and perfected this appeal.

The appellant is engaged in the city of St. Louis in the manufacture of white lead, and for the purpose of

carrying on this business it has constructed an extensive plant at First and Lombard Streets. The factory of appellant is located upon two separate parcels of land, called in the record the "north tract" and the "south tract," which are separated from each other by said Lombard Street. Appellant had improved both parcels of land for the purpose of carrying on its business of manufacturing white lead, by erecting thereon factory buildings, warehouses and other structures, and by installing in such buildings the necessary accessories, machinery and appliances for its trade.

The evidence discloses that in the manufacture of white lead it is necessary to devote a large amount of space to a process called in the nomenclature of the trade, "corroding" the lead. That part of appellant's plant situated south of Lombard Street (and called hereinafter for convenience the "south corroding yard") was used by appellant in the corroding process and upon it, as the proof shows, some 48 per cent of the lead processed in the factory was corroded. There was also a yard north of Lombard Street, and hereinafter referred to as the "north corroding yard," which was likewise devoted to similar purposes, and on which the remainder of the lead made by appellant was corroded. The south corroding yard, of which the city appropriated 17,800 square feet, contained in all 22,872 square feet; thus leaving, after the condemnation, only a wedge-shaped parcel containing 5072 square feet. The taking of the portion mentioned from the south corroding yard rendered the latter wholly useless for lead corroding purposes, and it is therefore strenuously contended that since, by the taking of the south yard 48 per cent of appellant's corroding area was destroyed, this fact so depreciated the value of appellant's factory as a lead factory as practically to destroy it. This, for the reason that upon the remaining corroding area it is impossible to operate the plant to its full capacity, and since it cannot be operated to its full capacity, the overhead expense renders it financially impossible to operate it at all. Upon this view appellant made below, and now makes here, two claims

for damages: (a) That it is entitled to the actual damages sustained by reason of the physical taking of its south corroding yard, that is, of the tract located south of Lombard Street, and (b) that it is entitled to consequential damages by reason of its entire plant being depreciated in value as a result of the city's taking part of the south corroding yard, without which the plant cannot be operated successfully, or profitably.

Many witnesses were called both by the city and by appellant. The testimony of these witnesses, as to the value of the south corroding yard which was actually and physically taken, varied greatly; the values fixed by some of the witnesses thereon being two or three times greater than the value fixed by other witnesses in the case. Likewise the depreciation which appellant urges will accrue to its plant by the physical taking of 48 per cent of its corroding yard area was fixed at amounts which varied greatly. Some of the witnesses fixed this latter depreciation alone at two hundred and fifty thousand dollars; others said no depreciation would result, and others testified that depreciation in varying amounts would result, thus fixing the amount thereof from *nothing to a quarter of a million dollars*.

Against the second contention of appellant set out above, the city, while not seriously disputing that appellant's plant could not be operated profitably or successfully without the south corroding yard, urges nevertheless that the value of the plant was not depreciated because other parcels of land could have been procured by appellant to take the place of the south corroding yard condemned by the city, upon which the necessary corroding process could be carried on by appellant as conveniently and economically as theretofore on the yard condemned.

At the request of appellant the trial court made, pursuant to the statute in such behalf, separate findings of fact and conclusions of law. Among these findings of fact the court specifically considered the point in this case which is most strenuously urged upon our attention by appellant. Its findings upon this point and

its conclusions of fact upon the controlling questions in the case are thus set out:

"That the city of St. Louis, plaintiff herein, has by an ordinance duly passed, authorized the appropriation of a strip of land 100 feet wide, for a right-of-way for its Municipal Bridge approach over that portion of said tract located south of Lombard Street and has under the authority of said ordinance condemned and appropriated for said bridge approach 17,800 square feet off of the northern portion of the tract lying south of Lombard Street, leaving a triangular strip containing 5072 square feet south of the part appropriated.

"That the taking of the 17,800 square feet south of Lombard Street depreciates the market value of the 5072 square feet south of the part taken, because it is left in a wedge-shape and separated from the remainder of defendant's property north of Lombard Street by the 100-feet-wide right-of-way for the bridge approach, appropriated under this proceeding, and by Lombard Street, a public highway.

"That the taking of the 17,800 feet south of Lombard Street does not depreciate the market value of the 60,000 feet north of Lombard Street, because it is shown from the evidence that for all marketable purposes this part is of sufficient size and is worth as much on the market without the part south of Lombard Street as it was worth when the same owner owned both parcels. The court further finds that immediately west of and contiguous to the part north of Lombard Street there is and was for sale when the commissioners' report was filed in this case, and when the money was paid into court for the use of exceptor herein, 21,000 square feet of land which could be acquired for about $50,000, and which was just as available for use in connection with the part remaining as the part appropriated.

"That if the defendant wished to continue to use the part remaining north of Lombard Street, for a lead manufacturing plant, it could by a re-arrangement of it in connection with the 21,000 square feet, use it to just as good advantage and as economically as it could be

used before the appropriation of the part south of Lombard Street, and that it would be just as valuable in its rearranged and readjusted condition as it was before the appropriation by the city of the part south of Lombard Street. The court therefore finds that the just compensation to which exceptor is entitled is the market value of the 17,800 square feet taken, the depreciation in the market value of the 5072 south of the part taken, the cost of rearrangement to suit the new conditions, and the depreciation in value of the 60,000 feet north of Lombard Street in its rearranged condition; all of which the court finds to be $67,100.''

To these findings of fact the trial court appended certain conclusions of law, only a part of which we need here consider. These conclusions of law will be found set out by us in pertinent fullness in our discussion of the case, and we need not here occupy space with them.

We have set forth above the two contentions made by appellant, as also the counter-contention made by the city touching the measure of damages for the alleged depreciation to appellant's plant. As to the law by which the court below was governed in fixing the value of the south corroding yard, most of which was actually taken, there is no dispute between the city and appellant, but touching the facts found by the court thereon, that is, the value fixed by the court to the parcel taken, there is dispute. These questions therefore, one of fact and one of law, are the only two which we will find it necessary to refer to in our opinion.

I. We are urged to revise the finding of the learned court *nisi* upon the question of the award of damages for the value of the parcel actually taken. The case was tried before the court sitting as a jury; there was substantial evidence of value offered upon both sides; the point of value being hotly contested. The learned trial court made a special finding of facts, by which he fixed the value of the parcel of land at $67,100. There was substantial evidence to support this finding and in such a situation we are as an appellate court powerless to

Weight of Evidence.

weigh the evidence in a law case such as this is. [Woods v. Johnson, 264 Mo. l. c. 293; Hatton v. St. Louis, 264 Mo. 634; Walther v. Null, 233 Mo. 104; Leavitt v. Taylor, 163 Mo. 158.]

II.   As nearly as we are able to gather from the briefs furnished us, the appellant complains of that part of the conclusions of law of the court below which reads thus:

"The preponderance of the evidence in the case, I think, shows that if this 'Wulfing-Fries-Bird' property had been acquired by the exceptor, it could have been used in connection with their plant which was left, as economically as the old yards could have been **Measure of Damages.** used.   And the preponderance of the evidence shows that the new yards could have been built on this property for sixteen thousand dollars, and then the exceptor would have had a much better plant, because it would have been new and up-to-date, whereas the corroding sheds or pens on the south lot were old and had depreciated fifty per cent; in other words, the exceptor would have been made whole.   But the exceptor contends vehemently that evidence of property to be acquired cannot be considered, because, First: The law does not contemplate an exchange of property; second, that the exceptor is only required in order to minimize the damages to use that property which he owns at the time and is not required to purchase other property.

"It is true that the city could not enforce an exchange of lands upon the exceptor.   It is also true that the city cannot require the exceptor to purchase other property to take the place of that which has been condemned, nor could the city pay exceptor anything but cash.   But that is not the object of the testimony, as is stated in the case of Railroad v. Switzer, 117 Ill. 399, above quoted; the Supreme Court says, page 402: 'It obviously should have been permitted the petitioner to show there would be other sources of water supply—not, as is supposed by appellee's counsel, for the purpose of

showing there would be no damages, but for the pur-
pose of affecting the amount of damage, the amount of
the estimates of damages by appellee's witnesses hav-
ing been based on the supposition that there would be
no other means of supplying the mill with water.'

"So in the case of G. C. & S. F. Ry. Co. v. Brugger,
24 Tex. App. 367, quoted above, wherein the court said,
page 369: 'It is clear to us that the proximity and the
price of adjacent or contiguous timber land of a sim-
ilar character was a fact proper to be considered by the
jury in determining the extent to which appellee's lands
would be depreciated by the loss of this particular
tract.'

"On page 370 the court says: 'It is plain that if
appellee's environment as to timber lands was such
that he would be able to supply the loss of his timber, or
lessen the loss and inconvenience occasioned by parting
with what he had, it was proper to show the fact, and
the cost to which he would be put in so doing, not as a
distinct item of damage, but to be considered in deter-
mining to what extent the value of his land would be af-
fected by the condemnation.'

"To the same effect see Sedgwick on Damages,
(3 Ed.) sec. 1172, page 437, which says: 'When the land
has a value for a particular purpose, the possibility of
obtaining other land in the neighborhood for the same
purpose must enter into and affect the market value,
and hence evidence bearing on this could hardly be ex-
cluded.'

"It was also claimed by the exceptor that the new
corroding sheds could not be built on the Wulfing-Fries-
Bird lot, because of the fire ordinance which was in-
troduced in evidence, but the evidence showed that
cement construction could be used to comply with this
fire ordinance and within the $16,000 estimated as the
costs of the new corroding sheds.

"This whole subject was before the commissioners,
and the evidence in regard to the Wulfing-Fries-Bird
lot was before them, and they must be presumed to have

considered it as an element (in diminution?) of damage, and I think under the authorities they had a right to do so.''

*Imprimis,* we are forced to bottom any consideration of a case growing out of the exercise of the right of eminent domain upon the premise that such cases are necessarily *sui generis.* This is so because both the Constitution and our statutes contemplate that the owner of private property taken for public use must be fully compensated therefor. It does not contemplate speculation, but only compensation; yet the owner must be made whole. And while it is conceded in the instant case by plaintiff city that the situation presented is one wherein the appellant's entire plant must be considered as if it were a single parcel, whereof a part having been condemned, the whole is thereby depreciated and damaged, it is yet manifest that any estimate of the damage done by taking this parcel from the whole is necessarily a guess. Indeed the testimony of the witnesses discloses this in no uncertain way, for their estimates of the damage done in the behalf mentioned supra, *varied from nothing to a quarter of a million dollars;* that is to say, some of the witnesses said there would be no depreciation whatever in the value of the whole property by reason of taking the parcel south of Lombard Street, while others placed such resulting depreciation alone at $250,000.

Nothing is clearer than that courts cannot even approximate the dealing out of even-handed justice upon such testimony as this. We are not saying that it was false, or dishonest testimony; it was merely expert testimony. In the face of this situation, we cannot see in what other way the learned court *nisi* could have reached any sensible conclusion except by reference to something concrete as a basis. What was done thereupon was substantially this: (a) The value of the ground actually taken was shown by the witnesses (and ultimately as we have seen above found by the court); (b) then there was shown the value of

St. Louis v. Railroad.

the improvements thereon, and this value was added to the bare ground value so found as above; (c) it was then considered by the court how much the taking of the south corroding yard had depreciated the value of the factory as a going concern, and (d) the proof showing that for $51,000 an equally commodious, convenient, economical and accessible parcel for a new corroding yard could be gotten and was for sale on the market, the trial court considered this fact as the measure of damages from depreciation of the whole plant.

In the *locus a non lucendo* character of the expert testimony presented upon the question of depreciation, what other course was open to the trial court? There is no doubt but that appellant was entitled to compensation for damages done to the whole of its factory as a lead factory. If this lead factory was worth less after the parcel constituting one of its theretofore corroding yards was condemned and taken, appellant is entitled to receive such full depreciation in cash. The whole difficulty is in ascertaining the amount of such depreciation. The case stood as if appellant had complained (as some of its witnesses did for it) that inasmuch as 48 per cent of its corroding yard area was taken, its factory for that became inoperable and worthless, and thereupon plaintiff had replied: Your complaint of 100 per cent depreciation is wholly untenable because you can now buy a parcel of land for $51,000 which will in every respect replace as a corroding yard that which we have taken. Were then the conclusions of law of the court warranted? We think they were as constituting a rational criterion by which to measure the alleged depreciation of land devoted to a special purpose.

It is conceded of course that damages for land taken through the exercise of the power of eminent domain may not be paid in anything but money; that neither other parcels of land nor the soil thereof are current media of payment therefor, and that the owner of land may not be compelled to swap lands or to move

into another town, or city, or state where the land is cheap and have such cheapness compared as a criterion of value against the lands taken. But when land is devoted to a special use and it is urged that such use has been wholly or partially destroyed by the taking of a parcel of such land, it will be appreciated that some concrete criterion by which to measure the quantum of damage sustained is absolutely necessary; otherwise the amount of the depreciation would be a mere matter of bald guessing.

The cases and authorities cited and commented on by the learned trial court bear out this view, we think. The case of Hannibal Bridge Co. v. Schaubacher, 57 Mo. l. c. 588, is in principle, likewise an authority for this view. For while in that case this court seems to have held in mind the duty of minimization of damages accruing in addition to the point here vexing us, the measure of damages there applied was in the last analysis the identical one here urged on us by the plaintiff. In the above case Schaubacher had a brewery, built on two lots which were (as here by a public street) separated from each other by a public alley. On the lot condemned were situate his pump, malt mill and power plant, with piping therefrom crossing the alley to the main plant, and (as here) absent and lacking all of which the brewery could not be operated successfully. There (as here) therefore it was urgently contended that the taking of the lot on which the above-named necessary accessories were located absolutely destroyed the brewery, and the latter was damaged to its full value. But this court said:

"After the appropriation of the land on the east side of the alley, on which the malt house, horse power, pump and pipe were situated, the brewery, which the evidence shows was very valuable, was rendered worthless. The amount of damages then would have been nearly equivalent to the whole value of the brewery. But if these fixtures and appliances could have been transferred to the western side of the alley and placed in such a situation that the brewery could have been

just as effectively operated as it was before, then the actual loss to defendants would have been the trouble and expense of making the removal. This then, we are inclined to think, would be the proper and appropriate measure of damages, viz: the cost and expense of removing the malt house, horse power, pump and pipe to the west side of the alley, so that they could be used as effectively and advantageously for running the brewery as it was run before, to which should be added compensation for the use of the brewery for what time it would have been necessarily idle, whilst the change and transfer were being made."

It was conceded by learned counsel for appellant in his argument *nisi* that the Schaubacher case is in point, and against him. But he argued substantially that since the Schaubacher case was decided our constitutional provision upon the point has been changed by adding to the word *"taken"* the words *"or damaged."* The fact stated is correct, but the addition of the words "or damaged" did not, by the great weight of authority every where, have the effect of changing the meaning of the constitutional provision in the remotest way, so far as concerns the specific and *instant question* of consequential damages arising from an actual taking by the exercise of eminent domain.

If private property be damaged by a public use in connection with an actual taking by the exercise of eminent domain, it is as effectually "taken" (4 Sutherland on Damages, 3948) as if it were blown into thin air and scattered by the four winds. That the change in the wording of our Constitution has broadened the field of consequential damages arising in cases wholly disassociated with an actual physical taking by the exercise of the right of eminent domain, there is no question. But the Schaubacher case itself recognizes the rule that upon an actual taking of private property for public use by the exercise of eminent domain the owner is entitled to full compensation for all damages incident to the taking of his property. For upon this point it was said in that case, at page 585:

"The statute requires the commissioners 'to assess the damages which the owner of the land may sustain by reason of such appropriation.' This by no means confines the assessment to the land actually taken. That may constitute the smallest amount of the injury done. There may be consequential damages which result by reason of the appropriation fairly comprehended within the scope of the law, and this case furnishes a strong illustration. Such is the construction placed upon similar statutes in other states."

Therefore we think it plain that the addition of the words "or damaged" to our constitutional provision has in no wise changed the rule applicable in a case like this wherein there has been an actual taking of one parcel whereby another parcel or the whole property has been affected by a resulting depreciation. Likewise, in cases in principle similar wholly to this it is said by Mr. Sutherland in his excellent treatise on the law of damages, that "where part of a tract of land is taken or damaged and its severance and the public use of it necessitates any new expenditure to protect or maintain the ordinary use of the residue such expenditures or the necessity therefor is an element of damage. The owner has a right to recover the amount so expended or required to be expended on the ground that the value of his premises is diminished accordingly. Thus, the necessity of maintaining fences along the line of a railroad or highway is a recognized item of damage." [4 Sutherland on Damages, sec. 1072.]

The rule of course should be limited to cases wherein only part of a tract devoted to a special use is appropriated. It can have no relevancy to a case wherein the whole of the parcel is taken. For, we repeat, in no case can the owner, for the convenience of the condemnor, be required to swap lands, or to go into the market and buy other lands in lieu of those taken. But in a case where the taking of a part of a tract which is devoted to a special use results in large depreciation in value for that special use, the measure of that depreciation ought to be the sum required to be expended

in order to rehabilitate the property for such use, or replace the plant *in statu quo ante capiendum;* provided of course that rehabilitation in such manner be practicable.   Otherwise, one whose fences had been taken from about his farm could refuse to build others and his farm being thus rendered useless as a farm, exact as damages the full value thereof; or one whose mill-pond was taken could demand the full value of his mill thus rendered useless for lack of water; or one whose mine or oil well was temporarily destroyed by condemning the tract on which the shaft or well or pump stood could demand full value of such mine or oil well. . In such case if a new fence, or pond, or shaft or well can be made on the land of the owner the cost of erecting the same or of making the change to reproduce the *status quo,* ought to be the measure of damages.   In cases where no available property is owned by him whose land is taken, the price at which other lands adjacent, equally as *valuable intrinsically,* as convenient, as economical in use, and as accessible, and which can be bought, may be shown as measuring the amount of depreciation to which the lands damaged but not physically taken have been subjected.

A situation wherein any other view is unthinkable is possible.   For if the appellant's lead factory had been worth a million dollars and the parcel actually taken had been itself of little value and had contained an accessory of small intrinsic worth but one without which the million-dollar plant would have been rendered useless, the principle would be exactly the same.   But even if appellant in the supposed case itself possessed no other land, would it be contended that the city could be saddled with the entire value of the plant as damages, when other lands in every way as available could be bought to reduce the damages?   We think not, and conclude that in so far as the learned trial court considered the price at which other lands equally as available and usable by appellant could have been obtained, as the *measure of damages of the depreciation in value of the*

*whole plant* by reason of the taking of the corroding yard, he was right and we rule this specific point against appellant.

It follows that the judgment below should be affirmed. Let this be done. All concur.