# STATE et al. v. WARD et al.

No. 7049.   Decided January 14, 1948.   (189 P. 2d 113.)

See 30 C. J. S., Eminent Domain, sec. 139. Right of abutting owner to compensation for railroad in street under constitutional provision against damaging property for public use without compensation, see note, 22 A. L. R. 145; 170 Id. 721. See, also, 18 Am. Jur. 878.

*Thatcher & Young,* of Ogden, for defendants and appellants.

*Richard W. Young,* of Berkeley, Cal., for defendant.

*Grover A. Giles,* Atty. Gen., and *Zar E. Hayes* and *C. N. Ottosen,* Asst. Attys. Gen., for plaintiffs and respondents.

PRATT, Justice.

Defendants, James A. and Mabel M. Ward, are the owners of a 26 acre plot of farm land near North Willard, Box

Elder County, Utah. They had, prior to the time their land was condemned, built thereon several farm out buildings and a basement house which they occupied and used as their home. The Wards built their basement house in 1935 and had lived in it for eleven years at the time of this proceeding. Mr. Ward testified that he and his family intended to continue living in the home until he was able to build another one. It seems to be undisputed that the basement home was not made uninhabitable by the widening of the road. The state of Utah proceeding with a plan to widen the highway, which passed the defendant's farm along the east side, brought this action to determine the value of .52 acres of defendants' land used for highway purposes and .17 acres taken for the purpose of acquiring the easement for irrigation ditches.

The jury gave a special verdict as follows:

"(1)  Value of 52/100 acres of land actually taken as a right of way together with a perpetual easement in 17/100 acres for irrigation ditch as of May 22, 1946 ......................$1000.00

"(2)  Damages accrued to the portion of defendant's premises not taken by reason of the land taken in question number one ...... .............................................$3000.00"

Defendants appeal and make certain assignments of error which may be classified as follows: (a) The court's rulings preventing the defendants from introducing as an exhibit the plan of the home they contemplated building on their basement house; (b) its refusal to allow an expert opinion on whether it was more feasible to use the basement house than to tear it down; and (c) the instructions which the court gave or refused to give regarding the way the damages to the defendants' remaining property should be ascertained.

(a) The defendants were allowed to show with great detail the planned use of their basement house. We do not think the exclusion of a plan of the house as it might appear in the future would prejudice their substantial rights in any way. It was merely cumulative evidence subject to questionable value in view of the fact that

defendants' ideas might change before completion thereof.
(b) The court's rejection of the expert testimony lies in
somewhat the same category. The jury was taken upon the
land and inspected the defendants' premises. Whether or
not it would be advisable for the defendants to continue
using the basement home was a matter which the jurors
could observe and understand without the aid of trained or
experienced persons or maps of prospective uses; especially
as the probably injury to the premises lay in the basement's
proximity to the traveled highway, and not in any methods
of construction.

(c) The real difference between the parties here concerns
the proper instructions to be given on damages to defend-
ants' remaining property. Defendants admit at the outset
that the remaining land as such would not be depreciated
by the taking. Their evidence of damage to the property re-
tained went to the value of the basement house before and
after the highway was constructed.

The question of fact for the jury was simple: What is
the difference between the value of the farm with a base-
ment house 42 feet from the edge of the highway and the
farm with a basement house 7 feet from the edge of the
highway with a perpetual easement for an irrigation ditch
covering 5 of those 7 feet? The evidence squarely presented
that question for the jury to consider. Defendant James
Ward, and his witnesses testified that the basement house
was rendered valueless. The plaintiff's witnesses testified
that it was depreciated in value but could still be used and
had a market value.

How would prospective purchasers willing to buy but
under no necessity of doing so, evaluate that farm were they
to buy it before condemnation; and how would they evaluate
it were they to buy it after condemnation? Probably the
most impressive thing to them would be the basement house
—foundation as it were. Situated some 42 feet back from
the highway, it might be considered an asset, in that the cost
of building a foundation for a house was eliminated. Situ-
ated 7 feet from the highway in juxtaposition to an irriga-

tion ditch, it might be quite a liability, as removal would possibly be desired. So the question is: How are these facts to be presented to the jury for its determination? The usual procedure is for experts in real estate values to be called who testify as to their opinion of the value of the farm before and as to its value after. In the course of such testimony, details which form the foundation of their opinion are discussed pro and con, such for instance as the effect of the location of the foundation; its cost of reproduction or its cost of removal. The weight given to the testimony of the experts is usally governed by the jury's opinion of whether or not the experts considered fully the various matters that have been affected by the taking.

Our Code Section 104-61-11 (1), (2) and (3) read as follows:

"The court, jury or referee must hear such legal evidence as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess:

"(1) The value of the property sought to be condemned and all improvements thereon appertaining to the realty, and of each and every separate estate or interest therein; and if it consists of differerent parcels, the value of each parcel and of each estate or interest therein shall be separately assessed.

"(2) If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvement in the manner proposed by the plaintiff.

"(3) If the property, though no part thereof is taken, will be damaged by the construction of the proposed improvement, the amount of such damages."

Obviously this case falls under paragraph (2). Although some things upon the remaining land may become utterly useless as a result of the taking, such injury becomes an element to be considered in measuring the damage to the remaining land, rather than to be ■ considered as property taken as contemplated by paragraph (1). *Lund* v. *Salt Lake County*, 58 Utah 546, 200 P. 510. For a discussion of damages as distinguished

from the value of property taken, we invite attention to *State* v. *Fourth Judicial Court*, 94 Utah 384, 78 P. 2d 502.

Defendant's requested instruction No. 3 embodies his theory of damages. It reads as follows:

"It is the contention of the defendants that they will suffer further and additional damages in the sum of Six Thousand Six Hundred Fifty and 00/100 Dollars ($6,650.00) by reason of the taking of the strip of land and the easement adjacent thereto. They base their contention upon the ground that by reason of the taking of this land their basement home, as now constructed is placed in such proximity to the new highway that no reasonable person would build the remainder of their home on said basement as originally contemplated, but on the contrary it is defendants' contention that a reasonable and prudent person confronted with the situation would abandon said basement, select a new site for their home in a different location and construct a new home thereon and that by reason of these facts the present basement has been rendered valueless and that it will have to be torn down and removed at additional cost and expense. Defendants itemize this additional damage as follows:

Value of basement now rendered worthless . . . . . . . . . . . . . .$4,000.00
Loss of 15 additional apricot trees which will have to be removed to make room for their new home .. . . . . . . . . . .    750.00
Construction of a new underground drain to connect with the present cesspool . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    200.00
Construction of a new underground culinary water line two inch galvanized iron four hundred feet . . . . . . . . . . . . . .    300.00
Moving of garage, loss of six shade trees, lawn, shrubs now growing about the present basement and filling and regrading for a new home . . . . . . . . . . . . . . . . . . . . . . . . . . 1,000.00
Cost of tearing down and removing present basement . . . . . .    400.00

Total   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$6,650.00"

This theory seems to be a replacement or restoration cost theory of damages.

The court instructed the jury that the defendants contended that the damages to the remaining property amounted to $6,650, but refused to instruct them on the different costs, that is, building a new basement, moving the garage, etc. In fact, he exemplified his ideas by saying that damages to the house could not be considered as a

separate item of damages. He instructed the jury in part as follows:

"Any definite physical injury to land or the improvements thereon which depreciates its market value is a damage which must under the law, be compensated for to the owner."

He then went on and instructed that "uncertain, remote, speculative or imaginary" elements of damage should not be considered but only "elements which are appreciable and substantial and actually lessen the market value" and that the damages to the remaining property must be limited to the difference in market value before and after condemnation. We are unable to find any substantial error in the court's instructions.

The universal rule of damages in condemnation proceedings is one of just compensation. The condemnee to be paid only so much as will compensate him for the damages to his property. See *State* v. *Fourth* ■ *Judicial District Court,* supra, and *City of Grand Rapids* v. *Barth et al.,* 248 Mich. 13, 226 N. W. 690, 64 A. L. R. 1507, Annotation at p. 1513.

If there is no taking of part of the property, but only a damaging as contemplated by paragraph (3) the cost of reconstructing and/or restoring a property becomes a. proper, but not necessarily the only means of ascertaining the amount of the condemnee's damages. The principle is applied in *Showalter* v. *State of Arizona,* 48 Ariz. 523, 63 P. 2d 189, 190, a case which the defendants rely upon very heavily. There the widening of a city street made it *necessary* to move two business buildings fronting on the old street. The costs of cutting a piece off the front of the building and constructing a piece on the rear, so that the building was the same size and in the same physical condition after as before the street was widened, was used in computing the damages to the condemnee's property. The soundness of that decision seems obvious. The costs of restoration in such a case fix the damages and accurately measure the decrease in the market value of the remaining

property. A purchaser would of necessity be required to make such repairs.

The restoration costs measure of damages is appropriate when such restoration costs accurately measure the decrease in the market value of the property damaged but not taken. In the present case the moving or changing of the foundation was not a necessity. It did not have to be moved on account of the highway. If, however, it were moved, then where would it be placed? Its location obviously would affect the value of the land theretofore used for farming, as it would displace part thereof. An effort to measure the effect of its removal simply by the cost of removal and its loss as a foundation as originally located does not truly reflect the depreciatory effect on the farm. The difference in market value of the *farm* before and after condemnation does truly reflect that loss, as presumably the difference will be founded upon the various changes incident to the proximity of the highway.

A great disparity between the cost of restoration and the diminution in market value of defendants' farm is revealed by the testimony. Diminution in market value was estimated as in the neighborhood of $1500, while restoration costs were calculated at $6,650, the latter, however, were not assured losses that were bound to happen at any cost.

We invite attention to the case of *Coos Bay Logging Co. v. Barclay,* 159 Or. 272, 79 P. 2d 672, 679. There the court approved the following:

"The jury will be permitted to consider the extent, if any, of the damage to the balance of the tract, from the appropriation of the land within the right of way, and included in that to consider any inconvenience resulting from the proximity of the condemned strip to the house, but the court is of the opinion that the question of the cost of moving the house not on the right of way would be too remote, especially in view of the fact that there is no knowledge which we could obtain at this time as to how far or where the house would be moved."

See also *Chase* v. *Worcester,* 108 Mass. 60.

The judgment of the lower court is affirmed, respondent to have his costs.

McDONOUGH, C. J., and WADE and LATIMER, JJ., concur.

WOLFE, Justice (concurring).

As to assignments of error 1 and 2, discussed under points (a) and (b) of the prevailing opinion, I have doubt as to whether the proffered evidence was admissible for any purpose; but since appellants concede that such assignments are insufficient upon which to base a judgment of reversal, and merely request that the court express an opinion thereon in the event of a reversal, I do not think it is necessary to determine those questions.

As to the real question in issue the appellants concede that the general rule is as stated in the prevailing opinion— that the damages of the condemnee are the difference in market value of the remaining property, before and after severance. However, appellants contend, as I understand their position, that in a case such as this, the jury should have pointed out to them, by instruction from the court, the various elements to be considered in determining the depreciation. Appellants went so far in this case as to submit a request for instruction embodying their theory and asking separate damages for claimed injuries to each separate part of the land. Not only did the court not err in refusing this request, but it would have committed error if it had granted it. The request was a complete departure from the well settled rule that damages are given for depreciation in the fair market value of the land as a whole.

The state put on two real estate experts, who testified that the depreciation in market value of the remaining land was $1500 or $1800. Both of these experts were subjected to searching cross-examinations, and the exact bases of their opinions were clearly shown to the jury, both as to factors considered by them in making their estimates, and as to factors unknown to or ignored by them.

As pointed out in the prevailing opinion, restoration costs may, in some cases, be an accurate measure of damages, i. e.

of the depreciation in market value. In other cases restoration costs may bear no relation to the depreciation in market value. Market value is the price at which a willing vendor would sell, and at which a willing buyer would purchase in a free and open market. Fair market value is ordinarily proved by the testimony of experts, who may be fully examined and cross-examined as to the factors considered by them, and the bases upon which they determined their appraisals.

As heretofore stated, the state put on two real estate experts. Appellants called none. Appellants put on evidence of the value of the basement home, replacement cost, cost of destroying the old home, value of trees, shrubs, fruit plants, etc. All of these factors were prominently before the jury. That the jury was fully aware of all these factors and that they took them into account in reaching their verdict is evidenced by the fact that they fixed the damages to the remaining property at $3,000, or about twice the amount fixed by the experts as the depreciation value. The appellants have shown no prejudicial error. For these reasons, I concur.