STATE, By and Through ROAD COMMISSION et al. v.
COOPERATIVE SECURITY CORP. OF CHURCH OF
JESUS CHRIST OF LATTER DAY SAINTS et al.

No. 7797.   Decided August 7, 1952.   (247 P. 2d 269.)

See 29 C. J. S., Eminent Domain, sec. 139. Damages for owner's remaining land. 18 Am. Jur., Eminent Domain, secs. 265 et seq.; 170 A. L. R. 721.

*Clinton D. Vernon,* Atty. Gen., *J. Lambert Gibson,* Deputy Atty. Gen., *Allen B. Sorensen,* Asst. Atty. Gen., for appellants.

*L. C. Montgomery,* Heber City, *Arthur Woolley,* Ogden, for respondents.

WADE, Justice.

The Cooperative Security Corporation of Church of Jesus Christ of Latter Day Saints and Wasatch Stake of Church of Jesus Christ of Latter Day Saints were owners of a tract of land containing 131.79 acres used as a dairy farm to

which reference shall hereafter be made as the "church farm." The condemnation proceedings were brought to take 7.89 acres of pasture land which were a part of the church farm, for a new highway adjoining Highway 40 in Wasatch County, Utah. Besides the 7.89 acres which were taken, the new right of way cut the pasture land so that two small tracts, one of 3.28 acres and the other of 1.21 acres, were left to the north of the new right of way. These small tracts because of their location and separation from the main tract depreciated greatly in value for the use to which they had been put.

The church farm was part of the welfare program of the Latter Day Saints Church. Its object was to supply milk for the needy. Labor, hay, and grain were contributed by the membership to this project. The land acquired for this project consisted of two tracts, one to the north and west of Highway 40 on which all the improvements constructed for the enterprise were placed and another tract on the other side of this highway which was used for pasturage. It is part of this latter tract which the State condemned for the new highway. Both of these tracts were used as a unit in the operation of the farm. The buildings and equipment acquired by this project required a minimum of 60 head of cattle for economical operation and had a capacity of approximately 100 head. There was testimony that it took all the land owned by the church farm to feed the minimum number of dairy cattle during a six month period that the pastures could be used and that the taking of part of this pasture land by the State reduced the amount that could be fed by about 10 head with the result that the entire project was damaged at least 20 per cent. There was testimony that the land, buildings and equipment were worth over $100,000 before the taking and about 20 per cent less after the taking.

The court as the trier of the facts found that the fair market value of the land taken for the right of way and easements was $2,564.25 and that the damage to the re-

mainder of the property not taken, because of the severance, was $10,919.57.

This appeal is taken by the State from that portion of the judgment granting severance damages in the amount of $10,919.57.

The State concedes that respondents are entitled to the judgment for the value of the land actually taken and even for some severance damages to the two small portions left, but argue that the evidence does not justify respondents' theory of severance damages which was based on the theory that the church farm was a unit operation and additional pasture land was not available.

Since the entire value of the two small tracts, one of 3.28 acres and the other of 1.21 acres would not amount to approximately $11,000 at the highest estimate of their value even if their severance from the main tract had made them completely valueless, the severance damages which the court awarded could not have been solely for these tracts and must necessarily have been based on the theory that the fair market value of all the remaining property, including the two smaller tracts left, had been depreciated by approximately $11,000 because of the taking of 7.89 acres of pasture land by the State.

Even if it were conceded that the land taken was part of a unit operation although the tract from which the land was taken was separated by a public highway from the tract upon which all the improvements were built, and that under the provisions of Sec. 104-61-11, (2), U. C. A. 1943, respondents were entitled to severance damages for the portion not taken, the question still remains whether under the facts of this case severance damages to the extent granted were proved.

The compensation to which an owner is entitled for severance damages in condemnation proceedings is the difference in the fair market value of his property before and

after the taking. *State* v. *Ward*, 112 Utah 452, 189 P. 2d 113. Where severance damage is sought to a remaining tract on the theory that the taking has depreciated the fair market value of that tract there must be proof that no comparable land is available in the area of the condemned land. See *Provo Water Users' Ass'n* v. *Carlson*, 103 Utah 93, 133 P. 2d 777. In that case the land condemned was pasture land which the owner claimed was a part of his entire dairy farm and that the taking greatly depreciated the fair market value of his remaining property. There was no proof introduced that there was not available other lands in the area which could have been put to the same use as the land taken and this court held that because of such failure of proof the testimony of the depreciation in value of the remaining property had "no adequate foundation of fact" and therefore did "not warrant a decision on any theory of severance damages." We there said on page 102 of 103 Utah, on page 781 of 133 P. 2d in discussing the necessity of evidence of the availability or non-availability of other lands for the determination of the value of the land taken and the depreciation, if any, to that left:

"The purchase price of a tract of land which produces the same relative results Carlson obtained from the pasture tract prior to condemnation, offsetting the advantages against the disadvantages, would be the controlling factor in the determination of market value of the pasture condemned, whether a greater or a lesser acreage would be required, due consideration being given to type and amount of feed produced, water available, and the location of the land with respect to other properties owned by Carlson. If he could purchase other pasture land or farm land convertible into pasture, within a distance from his barns comparable to that of the condemned tract, and such other lands would provide relatively the same kind of forage for the same number of cows or forage of equal ration-value throughout the seven months he used the wild pasture tract, it could not be contended that his properties in Charleston could be impaired or depreciated by taking the pasture. If another tract of equal forage-producing value and conveniences could be substituted for the tract condemned, whether larger or smaller in area, the defendant would be in relatively the same position he was in before the construction

of the reservoir. See *City of St. Louis* v. *St. Louis I. M. & S. R. Co.*, 272 Mo. 80, 197 S. W. 107."

In the instant case there was evidence that at the time the summons was served and possession of the land sought to be condemned was taken by the State there was available a tract of pasture land adjacent to respondents' property on the east and only separated from it by a fence. This tract was comparable to the land taken for the use to which it had been put. It contained 15.3 acres and it was admitted by Mr. H. Clay Cummings, one of the respondents herein, that at least a part of it was available and had been offered for sale but that respondents had refused to buy it. The owner of the property, who had to be subpoenaed by the State as a witness because he wished to remain on good terms with his neighbors, testified that as late as April, 1950 he had offered his entire field containing the 15.3 acres for sale to the respondents, but that the offer was no longer open. Sec. 104-61-12, U. C. A. 1943, provides in eminent domain proceedings that:

"For the purpose of assessing compensation and damages the right thereto shall be deemed to have accrued at the date of the service of summons, and its actual value at *that date* shall be the measure of compensation for all property to be actually taken, and *the basis of damages to property not actually taken,* but injuriously affected, * * *." (Emphasis ours.)

Under the provisions of the above statute the fact that at the time of the trial the land was no longer available was immaterial in determining the damages to which respondents were entitled. If similar land to that taken was available on the date the summons was served, which could have been substituted for that condemned, it cannot be contended that the entire project was depreciated in value because it was made economically unfeasable because of lack of pasture land to graze a minimum number of dairy cattle. Under such a state of the record the opinion of experts as to the amounts the project was damaged was wholly immaterial and irrelevant.

In granting respondents $10,919.57 as severance damages as well as $2,564.25 as the fair market value of the land actually taken, it is apparent that the court must have considered the opinion evidence in arriving at its results, because those amounts far exceed any evidence introduced of the actual value of the land taken and any severance damages to the two small tracts left which were admittedly depreciated in value. Further, by respondents' own testimony it appeared that the land to the east of them had been offered for $400 an acre and even if it were determined that it would have taken the entire 15.3 acres to replace the 7.89 acres condemned, the amount would be much less than that granted by the court and therefore this court cannot assume that the court based its severance damages on the amount it would have cost respondents to replace the condemned land and which would have been a proper element in determining the value of the condemned land.

Since the evidence shows that this property could have been replaced there was no basis for the award of severance damage except as to the two small tracts. ■ It becomes necessary for the court to reassess the damage for the taking, on a basis of the replacement cost, as well as to assess damages, if any, to the two small tracts which were severed.

Reversed with instructions to act in accordance with this opinion. Costs to appellants.

McDONOUGH, CROCKETT and HENRIOD, JJ., concur.

WOLFE, Chief Justice (concurring).

I concur. I desire to add, however, that when severance damages are sought, as in this case, because the taking of a part of a farm has upset the economic balance of the farm and thus has damaged that part of the farm not condemned, there must be proof that there are not available comparable lands which could be purchased by the condemnee *which would restore the economic balance of the farm.*