515 P.2d 450

STATE of Utah, By and Through its ROAD
COMMISSION, Plaintiff and
Appellant,

v.

Eldred W. FOX and Fay D. Fox, his wife,
Defendants and Respondents.

No. 13255.

Supreme Court of Utah.

Oct. 26, 1973.

Vernon B. Romney, Atty. Gen., Donald S. Coleman, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellant.

Jackson B. Howard, of Howard, Lewis & Petersen, Provo, for defendants and respondents.

TUCKETT, Justice:

Plaintiff initiated these proceedings to acquire certain land of the defendants to be used for highway purposes. Acquisition by the plaintiff was sought for the construction of Interstate 15 between the point of the mountain and Lehi City. The jury returned a verdict in favor of the defendants in the sum of $42,691. The State is here seeking a reversal of the judgment entered by the court below and for a new trial.

Prior to the commencement of these proceedings the defendants owned approximately 500 acres of land between the Jordan River and the highway known as I–15. The land was devoted to farming and dairying. The dairy setup consisted of a barn with room for 135 dairy cows with

individual stalls. The setup also contained milking facilities, a milk house, tank room and corrals. There was also a silage pit, a reservoir, a well and a service road used in connection with the farming operation. The service road, the reservoir and the silage pit were damaged or destroyed by the highway construction project.

In addition to the land taken in fee for highway purposes the State also acquired a permanent easement for the purpose of relocating an irrigation ditch on the farm and also a temporary easement for use during the construction of the project. The plaintiff and the defendants adduced evidence as to the market value of the land taken and on the issue of severance damages each side adopted the theory that the proper measure was the cost of reconstruction or the cost of cure. Evidence received as a part of the defendants' case indicates that the cost of reconstructing the silage pit was the sum of $21,500 while the evidence adduced on behalf of the plaintiff showed a reconstruction cost of $18,829. The State's expert testified that the cost of reconstructing the reservoir would · be in the sum of $1,400, while the defendants' estimate of that cost was in the sum of $2,200. The court permitted evidence as a part of the defendants' case which dealt with the cost of reconstructing the service road, a reduction in the value of the well and also the depreciation occasioned by relocation of the irrigation ditch which would prevent the use of part of the land for the building of homes to house persons other than the defendants who would be employed on the farm and in the dairy operation.

It is the plaintiff's contention that it was error to permit testimony as to the reconstruction costs without proof that the diminution in value of the remaining property would be greater than the cost of reconstruction. Both sides attempted to prove severance damages by using the cost of cure method in establishing proof of that issue. It is the State's contention as to the service road that its reconstruction was unnecessary inasmuch as the defendants could use the frontage road constructed along the east boundary of the farm in question as a part of the highway project. However, it is the defendants' contention that due to the type and size of various farm conveyances and implements the use of the frontage road would not be satisfactory. Plaintiff relies on Nichols on Eminent Domain, Volume 5, Section 23.2, pertinent parts of which are as follows:

(1) Evidence of the decrease in market value of the owner's land as it stands on account of the construction of the public work;

(2) Evidence of the cost of restoring the injured property to the same relative position to the public work in which it stood before its construction.

Inasmuch as the measure of damages is the decrease in market value of the land, and the trained judgment of the market in determining value would take into consideration the possibility of restoring the damaged property as far as possible to the same relative position in which it stood before the taking if the cost of such restoration would be less than the increase in market value which it would bring to the land, the condemnor is entitled to the adoption of the criterion of damage which produces the smaller result. Consequently, evidence of the cost of restoring the property as far as possible to its original relative position, when offered by the owner, is admissible only when there is also evidence that such cost is no greater in amount than the decrease in market value of the property if it is left as it stood. When the owner relies upon evidence of a decrease in market value of the property as it is left by the taking, the condemnor may show the cost of restoring the property to its former relative position. In any event, the condemnee is not entitled to the cost of restoration in addition to an award for the difference in the before and after value.

The case of State v. Ward,[1] a prior decision of this court, dealt with the problem facing us in this matter. It was the contention of the landowners in that case that a basement home in which they lived would be placed in such proximity to the new highway that it would not be prudent and reasonable to construct the remaining portion of the contemplated house on the basement and that a new site would have to be found. The court dealt with the problem in the following language:

> The restoration costs measure of damages is appropriate when such restoration costs accurately measure the decrease in the market value of the property damaged but not taken. In the present case the moving or changing of the foundation was not a necessity. It did not have to be moved on account of the highway. If, however, it were moved, then where would it be placed? Its location obviously would affect the value of the land theretofore used for farming, as it would displace part thereof. An effort to measure the effect of its removal simply by the cost of removal and its loss as a foundation as originally located does not truly reflect the depreciatory effect on the farm. The difference in market value of the *farm* before and after condemnation does truly reflect that loss, as presumably the difference will be founded upon the various changes incident to the proximity of the highway.

1. 112 Utah 452, 189 P.2d 113.

However, the Ward case is based upon a different fact situation. In that case, the court held the moving or the changing of the foundation was not a necessity. In the instant case the silage pit, reservoir and service road were made unusable by the construction of the highway and their restoration was a necessity if the defendants were to continue their farming and dairying operations. The displacement of these items from their original locations would entail the use of additional land.

The expert appraiser called by the defendants testified that the reduction in the fair market value of the defendants' property after the taking was equivalent to the cost of cure or restoration of the property. The State's appraiser also testified that the diminution in value of the defendants' property after the taking was in his opinion equal to his calculations as to the cost of cure.

After a careful consideration of the record we find no error which would justify the reversal by this court. Judgment of the court below is affirmed. Respondents are entitled to costs.

CALLISTER, C. J., and ELLETT and CROCKETT, JJ., concur.

HENRIOD, J., does not participate herein.