WASATCH GAS CO. v. BOUWHUIS et al.

No. 5017. Decided November 8, 1933. (26 P. [2d] 548.

*De Vine, Howell & Stine,* of Ogden, for appellant.
*Valentine Gideon,* of Ogden, for respondent.

STRAUP, Chief Justice.

This action was brought by the plaintiff and appellant to condemn a strip of land 20 feet wide over separate tracts of land owned by the defendants in Weber county, to lay a pipe line underground to convey and transport gas for sale and service to consumers and customers of the plaintiff. The right to condemn for such purpose is not disputed. The tract of land owned by Christian Bouwhuis and his wife is about 50 acres over which the strip extends a linear distance of 105 rods and in area is about $^{83}/_{100}$ of an acre; the tract owned by Jesse Bouwhuis and his wife is about 34 acres, over which the strip extends a linear distance of about 87 rods, and in area is about $^{65}/_{100}$ of an acre; the tract owned by Wanda Bouwhuis and his wife is about 25 acres, over which the strip extends a distance of about 9.4 rods and in area is about $^{7}/_{100}$ of an acre. The pipe is of steel to be laid in the center of the stip 26 inches below the surface of the ground, some of the pipe 10 inches in diameter, some 14, and to be welded at the joints. Most of the lands are highly cutivated and productive of crops of potatoes, sugar beets, vegetables, oats and other grain, and alfalfa.

By the complaint the plaintiff sought to condemn a perpetual easement or right of way over the strip to construct, lay, operate, maintain, and repair the pipe line, and valves to be encased in cement blocks 5 feet by 5 feet, with the right to enter upon the strip from time to time as may be necessary for the purpose of maintaining and keeping the pipe line in repair, the use and enjoyment of the easement to be subject to concurrent rights of the owners and occupants of the lands to use and occupy the strip not inconsistent nor interfering with the right of the plaintiff to use and occupy the strip for the purposes stated.

The defendants, in giving evidence as to compensation and damages to be awarded and to which they claimed to be en-

titled, urged that the easement, notwithstanding the reserved rights of the defendants, in effect constituted a taking of the whole strip, and hence were entitled to a fair market value of the whole thereof and compensation for damages to the remainder of the tracts injuriously affected by the contemplated easement; and in accordance therewith, over the objection of the plaintiff, the defendants were permitted to give evidence of the market value per acre of the respective tracts of which the strip was a part without the easement and before a severance of the strip from the respective tracts, and as to the depreciation of the market value of the remaining portion of the tracts not taken nor occupied and injuriously affected by reason of the severance and use of the easement by the plaintiff.

The plaintiff, in giving evidence on the subject of compensation and damages, on qualifying a witness as to knowledge and experience, propounded this question to him:

"Q. I will ask you if as a result of your experience you have become acquainted with the *market value of rights of way for a pipe line* over farming lands and such as the lands in question here?" (Italics added.)

The witness answering in the affirmative was then asked what such market value was to which counsel for the defendants objected on the ground of immateriality, and that the test was the value of the land the plaintiff proposed to take, and not the value of the right of way or easement. The court, in sustaining the objection, observed:

"Court: I am inclined to hold at this time that if you (the plaintiff) are granted an easement over the twenty-foot strip, with the privilege to go in and make repairs, that that constitutes a taking of the twenty-foot strip area taken and these defendants are entitled to be compensated for the area taken and the damage if any to the remaining land. That is my view of it.

"Mr. Howell: (Counsel for plaintiff) But still your Honor is going to give them (the defendants) rights in the twenty-foot strip.

"Court: Yes, they have the right to use that twenty-foot area in any way not inconsistent with the the rights of the plaintiff. You are seeking a permanent right over there to use and go on there and make repairs at any time. Of course they will be permitted to use it and cultivate it in any manner not inconsistent with your easement."

The plaintiff, on taking an exception to the ruling, then made this offer of proof:

"The plaintiff at this time offers to prove by this witness that he is familiar with the market value of the easement sought to be condemned in this proceeding, to wit, the right to lay the pipe line which is described in the complaint beneath the surface of the land of the defendants, so that the top of the pipe line is twenty-six inches below the surface of the ground, and that he would testify that *the market value of that easement is twenty-five cents a running rod.*" (Italics added.)

On renewed objections by the defendants, the offer was rejected by the court.

In obedience to the rulings to which exceptions were taken, the plaintiff then gave evidence with respect to the market value per acre of the lands of which the strip was a part, and as to the market value or depreciation of the remaining portions of the tracts not taken or occupied. There is a marked conflict in the evidence with respect thereto, especially as to the injury or damage to the remaining portions of the tracts not taken or occupied, the defendants giving evidence to show that such depreciation or damage was from 10 to 15 per cent of the market value without the easement, the plaintiff that there was no such depreciation, or any substantial injury or damage to the remaining portions of the tracts.

The case was tried to the court, who made findings that the market value of the lands per acre of the tract owned by Christian Bouwhuis and his wife was $450; that the area of the strip on their lands was $83/100$ of an acre, and "that the fair and reasonable market value of said strip was the sum of $373.50"; that the strip constituted a part of a larger parcel or tract owned by Christian Bouwhuis and his wife, "and that the damages to the remainder of such tract of which the strip was a part, were, by reason of the easement, the sum of $257.31." Similar findings were made as to the defendants Jesse Bouwhuis and his wife, except that their land per acre was found to be $500, the market value of the area of the strip, $65/100$ of an acre, $325, and the damages to

the remainder of the tract, $369; as to the defendant Wanda Bouwhuis and his wife, the market value of their land per acre, $100, the value of the area of the strip across their land $7/100$ of an acre, $7, and the damages to the remaining portion of their tract, $18.

Judgment was entered accordingly, and upon the payment of such amounts the court granted the plaintiff a perpetual right of way or easement across the strips 20 feet wide, for the purposes stated in the complaint, and granted the plaintiff "the right to enter upon such strips of land at any time it may be necessary or convenient for it to do so and to use the same for the purpose of constructing, maintaining, operating and repairing such pipe lines," and that, except in so far as the use and occupation of the strip by the defendants may not interfere with the easement and right of way condemned to the use of the plaintiff, the defendants, their heirs, etc., and assigns, "shall have the right to use and occupy said strips of land for any lawful purpose."

The plaintiff appeals. It assigns as error the rulings heretofore referred to as to the measure of compensation and damages, and as to the measure of damages adopted by the court in the making of the findings and on which the judgment was rendered. The plaintiff urges that the proper measure of compensation and damages, in view that the plaintiff sought only to condemn an easement over the lands of the defendants, was the *market value of the easement,* and not the market value of the strip, for that, as is argued, the plaintiff neither sought, nor was granted, the fee to the strip, only an easement over it, and hence the plaintiff was required to compensate the defendants only for what was taken from them, the use of the easement. On the other hand, it is the contention of the defendants that the plaintiff seeking and being granted a perpetual easement over the strip for the purposes stated in the complaint, with rights of ingress and egress and to enter the strips at any time it may be necessary or convenient for the plaintiff to do so in the use and enjoyment of the strip, in legal effect, constituted a

taking of the whole strip, entitling the defendants to the fair market value of the strip, and to damages for the remainder of the tracts injuriously affected and not taken or occupied by the plaintiff.

Both parties cite and rely on our statute dealing with the subject of eminent domain, especially parts of section 7331, Comp. Laws Utah 1917 as amended by Laws 1919, c. 126 relating to estates and rights in lands subject to condemnation, including a fee-simple title when taken for public buildings or grounds, etc., and "easement, when taken for any other use"; parts of section 7332 relating to property subject to condemnation, including real property belonging to any person and rights of way, etc.; section 7340 relating to damages and how assessed, among other things, by ascertaining the value of the property sought to be condemned, etc., and, if it consists of different parcels, the value of each parcel and of each estate or interest therein to be separately assessed, and, if the property sought to be condemned consists only of a part of a large parcel, the damages by reason of the severance accrued to the portion or portions not sought to be condemned.

Under the statute, by text-writers and by the adjudicated cases, we are of the opinion that the measure of compensation and damages contended for by the plaintiff, by ascertaining the market value of the easement sought to be acquired by condemnation of the strip, is not tenable. The general rule, and as stated in 2 Lewis, Eminent Domain (3d Ed.) § 694, where a part of a tract of land is taken, "is that the measure of damages consists of the value of the part taken and damages to the remainder, less such benefits, if any, as may be set off by the law of the forum. Many cases state the measure of damages to be the difference between the value of the whole tract before the taking, and the value of the remainder after the taking." Such latter statement is to some extent criticized by the author, for the reason that such measure would permit the consideration of benefits of every kind, and should be qualified by excluding general

benefits. The author further states that "other cases state the measure of damages to be the value of the part taken and the diminution in value of the part not taken, or the value of the part taken and the difference in value of the part not taken before and after the taking." Such measure to some extent is also criticized by the author for the same reason heretofore stated as to benefits. But we are not concerned with that, for here no benefits to the defendants are claimed.

In 2 Nichols on Eminent Domain (2d Ed.) § 237, it is stated that "the measure of compensation when part of a tract is taken is the difference between the fair market value of the whole before the taking and the fair market value of what remains.". From these texts and the numerous cases cited by the authors, we think it clear that, in ascertaining the amount of compensation or damages to which the landowner is entitled, it is not the value of the right of way or of the easement acquired by the condemner, but the value of the lands, or the interest therein, taken from the landowner; and, where only a part is taken from a larger parcel or tract, the damages which the landowner has sustained to the remaining portion of the tract injuriously affected and not taken or occupied. We thus are of the opinion that no error was committed by the trial court in rejecting the offer of proof proposed by the plaintiff.

The material question here is as to the extent of the taking of the strip. That the condemnation was a taking of private property, a taking of the strip for the purposes sought and granted, is clear enough. *Stockdale* v. *Rio Grande Western R. Co.*, 28 Utah 201, 77 P. 849, where it is held that any substantial interefrence with private property which destroys or materially lessens its value, or by which the owner's right to its use and enjoyment is in any substantial degree abridged or destroyed, constitutes a taking. If, as is contended by the defendants, that the taking of the strip in question, in effect, constituted a taking of the fee, or as the equivalent thereof, or a taking

which in effect deprives the landowner of all substantial use or enjoyment of the property, or which constitutes a deprivation of the full market value of the property, then the measure of damages on which the findings and judgment are based was proper; and, in such event, the judgment of the court below should be affirmed. To support such view, the defendants cite and rely on the rule as stated in 22 C. J. 726. There, under the heading, "Taking perpetual easement," it is said that:

"Where by virtue of the power of eminent domain the right is acquired to occupy and use the surface of land perpetually for a given purpose, the bare fee left in the owner is for all practical purposes valueless, and it is not error to assess the damages as if a fee were taken."

That, as is seen by the findings and judgment, is what the trial court in effect did. It may readily be conceded that, where a right is granted to occupy and use the surface of land perpetually for a stated purpose, such as a perpetual easement over lands to construct, operate, and maintain a railroad, and where the occupation for such purpose usually is exclusive, and the owner of the land deprived substantially of all use and enjoyment of the property, that the fee, though remaining in the owner, is practically valueless, and that the measure of compensation in such particular should be as though the fee had been taken. The question is whether on the record such principle is here applicable. In 10 Cal. Jur. p. 347, § 61, it is said:

"While it is no doubt true that ordinarily a city or town or a railroad company in acquiring land for highway or railroad is only entitled to acquire by condemnation proceedings an easement over the land, and that the fee remains in the owner, yet in most condemnation cases for highways or railroads this distinction, as far as it enters into a determination of the damages to be assessed for the right of way acquired thereby, has no practical application. Usually in such cases there is no substantial difference in value between the easement and the fee of which the law will take notice. Hence in ordinary cases where condemnation for a right of way is sought evidence is admissible to show, as the damages sustained, the full value of the land taken upon the theory that the easement will be perpetual; that the right of

way acquired, though technically an easement, will be permanent in its nature and the possibility of abandonment by nonuser so remote as not to be taken into consideration; that the exercise of the right will require practically the exclusive use of the surface; and that any interest which may be reserved to the owner of the fee will be only a nominal one and of no value. Under such circumstances, as there can be no substantial determinative value in the fee apart from the easement, the law will not consider them separately but will require the condemning corporation to pay the value of the fee as the measure of the damages sustained. When, however, the easement sought is of a less exclusive character, as, for example, that of a telegraph line, or when, by reason of the existence of minerals or oil underneath the surface which can be taken out without interfering with the public easement, the fee has a substantial value, the condemning party is not bound to pay the full value of the land taken but merely the decrease in market value due to the imposition of the public easement; in other words, in awarding compensation the value of the interest in the land remaining to the owner is to be deducted from the fair market value of the land."

Somewhat in harmony with that is the case, as it was submitted to the jury, of *Telluride Power Co.* v. *Bruneau,* 41 Utah 4, 125 P. 399, Ann. Cas. 1915A, 1251, in which was involved a condemnation of a strip of land 20 feet wide over lands of the defendant for an electric power line. We say as the case was submitted to the jury, for that, on the appeal, no question was presented as to the measure of damages on which the case in such particular was submitted, and hence no opinion was expressed nor was any required to be expressed with respect thereto. However in the case of *San Pedro, L. A. & S. L. R. Co.* v. *Board of Education,* 32 Utah 305, 90 P. 565, 567, 11 L. R. A. (N. S.) 645, this court in the course of the opinion said:

"To authorize a finding that the property is wholly destroyed for school purposes, the evidence must make it appear that it is impractical to continue the school by reason of the construction and operation of the railroad. By this is not mean that it must be shown to be utterly impossible to conduct a school, but what is meant is that it must apear that, after reasonable effort and diligence upon the part of the board of education and the teachers to avoid the physical dangers and to overcome the interference from the operation of the trains, it is no longer practical to conduct the school. So long as these

things may be overcome by reasonable effort, the efficiency and safety of the school is only impaired, and not wholly destroyed. Until that destruction is shown, appellant cannot legally be required to pay for the full value of the property, but can be required only to make good the damages caused by its interference of the conduct of the school. The mere fact fact that it may not be easy to determine just what the damages are in case the property is not wholly destroyed does not alter the legal principle that appellant cannot be required to do more than to make compensation for any damage caused by it."

In the case of *Postal Tel. Cable Company* v. *Oregon S. L. R. Co.*, 23 Utah 474, 65 P. 735, 90 Am. St. Rep. 705, it was held that, where a railroad company's right of way has been condemned for the use of a telegraph company in constructing and maintaining its lines, the measure of damages is the decrease in the value of such right of way for railroad purposes.

In challenging the measure of damages adopted by the court in the making of its findings and upon which the judgment was based, requiring the plaintiff to pay the full market value of the whole of the strip as a part of the tract before severance, the plaintiff cites and relies on the case of the *City of Seattle* v. *Faussett*, 123 Wash. 613, 212 P. 1085. There the city sought to condemn lands of the landowner for the construction and maintenance of an electric transmission line. The city offered to prove that it did not seek to condemn the fee, only an easement, reserving to the landowner a substantial quantum of use of the land sought to be condemned, though not wholly unimpaired by the use the city would make of the right of way or easement in placing and maintaining thereon towers and poles to carry its wires in the transmission of its electric energy, and to lessen the compensation to be paid the landowner. On objection of the landowner, such offer of proof was rejected, the trial court observing that the city had no power to take such a limited use of the right of way and have its compensation limited accordingly; and that the city was required to take an absolute fee title to the land covered by its contemplated right of way and suffer compen-

sation to be awarded accordingly, or take no interest therein. Compensation was so awarded, from which the city prosecuted an appeal. The appellate court held that there was not anything in their statute, nor by prior adjudications of that state, requiring the city in such case to take the fee-simple title or nothing, that the prior decisions of that jurisdiction were to the contrary and to the effect that no more propery should be taken than the public use required, and, if an easement satisfied the requirement, to take the fee would be injurious to the owner, who was entitled to retain whatever the public needs did not require. The appellate court thus held that the trial court by rejecting the proffered evidence committed prejudicial error, and remanded the case for a new trial. In notes to the case of *St. Louis, K. & N. W. R. Co.* v. *Clark*, 26 L. R. A. 751, the annotator on page 753 says that:

"The right to leave a land owner some easements, rights, or beneficial interests in lands condemned in order to minimize his damages is sustained in most of the cases on the subject, as in the main case."

Here, by the complaint of the plaintiff and by the decree, rights of the defendants were reserved to them to occupy and use the strips over which the easement was granted, not inconsistent with, and which did not interfere with, the use of the easement. Evidence was given to show, and so was testified to by the defendants and by witnesses called by them, that the laying and maintenance of the pipe line itself 26 inches below the surface of the ground did not in any substantial degree hinder or prevent the cultivation of the strip and the raising of crops thereon, except as the entry to the strip by the plaintiff in making inspections and repairs and by digging or otherwise might injure or destroy crops growing on the strip; and the right which the plaintiff had at any time it found it necessary or convenient to enter the strip to make repairs, etc., was a substantial interference with the defendant's right to the use of the strip in planing, cultivating and raising crops thereon.

While on the record the use reserved and granted to the defendants of the strip covered by the easement was not wholly unimpaired by the use which the plaintiff sought to make and by the decree granted in and to the easement, still a substantial quantum of use was reserved to the defendants. Though such use, as a matter of fact, may not be of much substantial value, still on the record we cannot say, as matter of law, that it had no real or substantial value. That the perpetual easement over the strip has a tendency to affect the market value of the fee of the strip as well as of other portions of the tracts not condemned may well be conceded. But on the record it may not, as a matter of law, be said that the granting of the easement rendered the fee, or the use reserved to the defendants, valueless. Whether, as matter of fact, the granting of the easement has that effect, may be another matter. It is apparent that the court, in making the findings upon which the decree was based, pursued the theory that the condemnation of the strip for the use and purposes of the easement constituted a taking of the whole strip to the same extent as though the fee simple title had been condemned and taken, or that the use and occupation of the strip by the plaintiff, by reason of the easement, as matter of law, rendered the fee valueless, analogous to a situation of a condemnation of a strip of land for a railroad right of way or easement, and where the condemnation usually gives the condemner an exclusive, or substantially an exclusive, possession of the strip condemned and over which the easement or right of way is granted for the maintenance and operation of the railroad, in which instance the granting of the easement, as a general rule, renders the fee left in the landowner of no substantial or practical value; and that such result was reached by the trial court without taking into consideration the use and occupation of the strip reserved to the defendants to use and occupy it for any lawful purpose, not inconsistent with the use of the easement to be exercised by the plaintiff, and thus awarded compensation for the market value of the whole strip as in condemnation of a

strip for railroad purposes, or as in a case where the condemnation of a strip for an easement renders the fee valueless for all practical purposes. In that we think the court erred, without an express finding supported by evidence that the granting and exercise of the easement rendered the fee, or the use and occupation of the strip reserved to the defendants, of no practical or substantial value.

Now as to the overruling of the plaintiff's objection to the evidence of the defendants admitted as to market value, etc.: In ascertaining the amount of compensation and damages to be awarded the defendants, it was competent and material to show the market value per acre of the respective tracts of which the strip in question was a part, and, by so doing, in effect showing the market value of the strip itself as a part of the tract without the easement upon it, and as in effect was permitted to be done by the defendants; but from that market value there should have been deducted the value, if any, of the use and occupation of the strip reserved to the defendants, which in effect is about the same thing as showing the market value per acre of the tract of which the strip was a part without the easement, and then the market value of the strip with the easement upon it. By such method the value of the property sought to be condemned—the strip 20 feet in width—may be ascertained; and then the damages which may have accrued to the remainder of the tracts not sought to be condemned, by provin the injury thereto or the depreciation, if any, of the market value thereof, by reason of the severance and by the operation and use of the easement by the plaintiff. In other words, there is no apparent error with respect to the character of the evidence admitted, but as to the measure adopted by the court in the making of the findings and upon which the compensation and damages were based and judgment rendered as hereinbefore indicated, in substance treating the fee or the use reserved to the defendants of the strip condemned of no substantial value without any finding to that effect.

The judgment of the court below is therefore reversed and

the case remanded for a new trial; each party to bear his own costs on appeal.

ELIAS HANSEN, FOLLAND, EPHRAIM HANSON, and MOFFATT, JJ., concur.