2011 UT 62

**UTAH DEPARTMENT OF TRANSPOR-TATION, Plaintiff and Respondent,**

v.

**ADMIRAL BEVERAGE CORPORATION,** Park City West & Associates, Valley Bank & Trust Company, and Valley Mortgage Company, Defendants and Petitioner.

No. 20081054.

Supreme Court of Utah.

Oct. 18, 2011.

Rehearing Denied Feb. 22, 2012.

Mark L. Shurtleff, Att'y Gen., Brent A. Burnett, Randy S. Hunter, Asst. Att'ys Gen., Salt Lake City, for plaintiff.

Reed L. Martineau, David Jason Hawkins, Salt Lake City, for defendant Admiral Beverage Corporation.

Donald J. Winder, John W. Holt, Salt Lake City, for amicus James Ivers, Katherine Havas, and P & F Food Services.

On Certiorari to the Utah Court of Appeals

Justice PARRISH, opinion of the Court:

## INTRODUCTION

¶ 1 The Utah Department of Transportation (UDOT) condemned real property belonging to Admiral Beverage Corporation (Admiral) as part of the reconstruction of the Interstate 15 freeway (I–15). Admiral is entitled to compensation from the state for the taking of its property. In the district court, Admiral sought to introduce evidence of the fair market value of its property, including evidence of its damages arising from the loss of view and visibility of Admiral's remaining property. The district court ruled that evidence of the fair market value of Admiral's property was not admissible under our prior opinion in *Ivers v. Utah Department of Transportation*, 2007 UT 19, 154 P.3d 802. The court of appeals affirmed. We take this occasion to review *Ivers*. We conclude that our holding in *Ivers*, which allows severance damages only for "recognized property rights," is too restrictive to accord the full protection of the Utah Constitution and is inconsistent with both Utah statutes and our prior case law. We consequently overrule that part of *Ivers* and allow Admiral the right to recover from UDOT for the decrease in the fair market value of its remaining property resulting from the condemnation. In so doing, we reverse the court of appeals.

## BACKGROUND

### I. FACTS AND PROCEDURAL HISTORY

¶ 2 This action stems from UDOT's condemnation of Admiral's property for the I–15 freeway reconstruction project. Admiral owns two parcels of land to the west of I–15 in Salt Lake County. A frontage road owned by Salt Lake City, 500 West, runs between I–15 and Admiral's property. As part of the reconstruction project, UDOT expanded I–15 to the west, causing 500 West to be moved partially onto Admiral's property. UDOT also elevated I–15 to approximately twenty-eight feet, thus cutting off the view from Admiral's property to the east and impacting the visibility of its property from the freeway. No part of the I–15 freeway itself is located on or touches Admiral's property.

¶ 3 In order to complete the project,[1] UDOT filed separate condemnation proceedings against the two parcels in the summer of 1997. At that time, one of the parcels, lot 16, was owned by Admiral and the other, lot 17, was owned by Mark Investments Company. Admiral later purchased the Mark parcel and the district court subsequently consolidated the two cases.

¶ 4 The parcels at issue were appraised several times. The first appraisals took place before Admiral purchased the properties. In November of 1994, Jerry Webber appraised both parcels. Shortly thereafter, Admiral purchased lot 17, based upon the fair market value as reflected in the 1994 appraisal. Mr. Webber made a second appraisal of the fair market value of lot 16 in October of 1997. Admiral purchased that property in early 1998, again based on the fair market value as reflected in the appraisal. In assessing fair market value, Mr. Webber considered all factors customarily taken into account by a willing buyer and seller, including view from and visibility of the property. Mr. Webber did not isolate the specific values associated with view or visibility because it is "not possible to isolate and identify one and exclude the other."

---

1. At oral argument before this court, UDOT conceded that the property it took from Admiral was essential and integral to the completion of the I–15 project.

¶ 5 Mr. Webber and two other appraisers later conducted additional appraisals for purposes of this litigation. Specifically, the appraisers sought to determine the amount of severance damages to which Admiral is entitled. As with the initial appraisals, each subsequent appraisal assigned a fair market value to each parcel. Again, the appraisers focused on all factors that affect market value but were unable to assign specific values to any of the numerous factors affecting fair market value, including any decrease in value due to loss of visibility. And the appraisers could not find any comparable properties that would help to indicate or verify the value of the properties' view and visibility.

¶ 6 In early 2005, UDOT filed a motion in limine regarding the evidence that would be admissible at trial to prove Admiral's severance damages. UDOT's motion sought to exclude evidence of severance damages caused by loss of visibility from the freeway into the non-condemned portion of Admiral's property. Admiral responded with its own motion in limine seeking to allow evidence of all factors affecting the market value of its remaining property. The district court granted UDOT's motion and denied Admiral's motion in a Memorandum Decision and Order of October 31, 2005. Though the district court certified its order as final and Admiral appealed in 2006, the court of appeals dismissed the appeal without prejudice, holding that the order was not eligible for certification under rule 54(b) of the Utah Rules of Civil Procedure. The case continued in the district court. UDOT thereafter filed additional motions in limine to exclude certain severance damage evidence, which the district court granted in a minute entry dated December 27, 2007, ten months after we issued our opinion in *Ivers v. Utah Department of Transportation*, 2007 UT 19, 154 P.3d 802.

¶ 7 Admiral sought an interlocutory appeal on the question of whether the trial court erred in excluding evidence of severance damages based on the loss of view from Admiral's remaining property. The court of appeals agreed to review the case and affirmed the district court in a brief memorandum decision. *Dep't of Transp. v. Admiral*

*Beverage Corp.*, 2008 UT App 426, ¶ 5, 198 P.3d 1003. The appeals court held that because Admiral's property did not directly abut I-15, but instead abutted 500 West, the abutment rule limited Admiral's compensable right of view to 500 West. *Id.* ¶¶ 3-5. The court of appeals specifically noted that our *Ivers* decision had not eliminated the abutment rule. *Id.* ¶ 3 n. 1.

¶ 8 Following the court of appeals' decision, Admiral petitioned for a writ of certiorari. We granted review on the issue of whether the court of appeals erred in its ruling on Admiral's claim for severance damages for loss of view. After hearing oral argument, we issued an order for supplemental briefing and rehearing on the issue of whether *Ivers* should be overruled to the extent that it prevents a landowner from recovering severance damages for loss of visibility.

## II. OVERVIEW OF *IVERS V. UTAH DEPARTMENT OF TRANSPORTATION*

¶ 9 Because the continued validity of our decision in *Ivers v. Utah Department of Transportation*, 2007 UT 19, 154 P.3d 802, is at issue, we review the central holdings of that case. The facts of *Ivers* and this case are strikingly similar. *Ivers* was a condemnation action filed by UDOT in connection with a project to widen and elevate U.S. Highway 89. *Id.* ¶ 1. UDOT exercised its power of eminent domain to acquire a portion of property owned by the operator of an Arby's restaurant (Arby's) in Farmington, Utah. *Id.* The condemned property was used for the creation of a frontage road, and no portion of the raised highway, its footings, or its foundation was constructed on the condemned land. *Id.* ¶ 3.

¶ 10 Arby's sought severance damages resulting from the loss of visibility of its restaurant from the highway and the loss of view from the property. *Id.* ¶ 5. It argued that the loss of visibility and view materially diminished the market value of its remaining property. *Id.* The trial court precluded Arby's from presenting evidence of damages resulting from the loss of visibility or loss of

view. *Id.* The court of appeals affirmed. *Id.* ¶ 6.

¶ 11 On certiorari review, we "address[ed] separately Arby's claims for loss of view from their property and the loss of visibility of their property." *Id.* ¶ 10. As to the first issue, we held that Arby's was not entitled to damages for loss of visibility because "landowners do not have a protected interest in the visibility of their property." *Id.* ¶ 12. We reasoned that a claim for loss of visibility was tantamount to a claim for decreased traffic flow past one's business. *Id.* ¶ 13. And we had previously held that a landowner does not have a right to a certain flow of traffic. *Id.*

¶ 12 Unlike loss of visibility, we held that loss of view was compensable. *Id.* ¶ 16. This was because "Utah law ... recognize[s] an easement of view from one's property." *Id.* (emphasis omitted). UDOT argued that, notwithstanding Arby's easement of view, Arby's was not entitled to damages for loss of view because the raised highway was not built on the portion of land UDOT had acquired from Arby's. *See id.* ¶¶ 18–19. We rejected this argument. *Id.* ¶ 21. We held that severance damages are appropriate "[w]hen land is condemned as part of a single project—even if the view-impairing structure itself is built on property other than that which was condemned—if the use of the condemned property is essential to the completion of the project as a whole." *Id.* This is because "the impairment of view caused by the completion of the project could and would not have arisen 'but for' the condemnation." *Id.*

¶ 13 Admiral urges us to overrule the part of *Ivers* that prevents a landowner from recovering severance damages for loss of visibility. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(a).

### STANDARD OF REVIEW

¶ 14 "On certiorari, we review the decision of the court of appeals and not that of the trial court." *Arbogast Family Trust v. River Crossings LLC,* 2010 UT 40, ¶ 10, 238 P.3d 1035. The interpretation of precedent is a question of law that we review for

correctness, giving no deference to the court of appeals' conclusions. *See Salt Lake City Corp. v. Big Ditch Irrigation, Co.,* 2011 UT 33, ¶ 19, 258 P.3d 539.

### ANALYSIS

¶ 15 Admiral asks us to overrule the part of our decision in *Ivers v. Utah Department of Transportation,* 2007 UT 19, 154 P.3d 802, that prevents a landowner from recovering severance damages for its loss of visibility. Admiral argues that the *Ivers* decision disregards the constitutional mandate that just compensation be paid when private property is taken. According to Admiral, when assessing severance damages, a landowner must be put in as good a pecuniary position as he would have been absent the taking. This means that diminution of market value is the proper measure of severance damages. And the landowner must be able to present evidence of all factors that affect the fair market value of the portion of its property not taken. UDOT disagrees. It argues that, when only a portion of a landowner's property is taken, the landowner is entitled to severance compensation only for damage to "protectable property interests." And it claims that Utah courts have never recognized a protected property interest in a loss of visibility. Thus, according to UDOT, Admiral is not entitled to damages for loss of visibility.

¶ 16 Admiral's proposed rule would require that we partially overrule *Ivers.* "[W]e do not lightly overrule our prior opinions." *State v. Bennett,* 2000 UT 34, ¶ 8, 999 P.2d 1 (Zimmerman, J., concurring). Under the doctrine of stare decisis, a party asking us "to overturn prior precedent has a substantial burden of persuasion." *ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.,* 2010 UT 65, ¶ 23, 245 P.3d 184 (alteration omitted) (internal quotation marks omitted). But this does not mean that stare decisis is an entirely inflexible doctrine. "The adherence to precedent is no doubt a commendable judicial virtue, but, if carried to extremes, may easily, like most virtues, border upon vice." *Kimball v. Salt Lake City,* 32 Utah 253, 90 P. 395, 396 (1907). Thus, we may overturn our precedent if we are "clearly convinced that the

rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent." *ASC Utah,* 2010 UT 65, ¶ 23, 245 P.3d 184 (internal quotation marks omitted). And we are more inclined to overrule our precedent when it becomes apparent that a prior rule does not comport with a constitutional right. *See Kimball,* 90 P. at 396–97 ("The law as declared by the courts ... should in no event curtail or minimize constitutional provisions.").

¶ 17 After reviewing our *Ivers* decision, we conclude that the requirements for us to overturn that precedent are satisfied in this case. A careful review of the Utah Constitution, applicable statutes, and our eminent domain case law reveals that *Ivers* was wrongly decided. Indeed, until *Ivers,* we had never held that a landowner who has had a portion of his property physically taken may recover severance compensation only for damages to "recognized property rights." To the contrary, our measure of severance damages has *always* been the diminution in market value of the remainder property. *See infra* ¶ 30 n. 4. And in assessing fair market value in the context of severance damages we have *always* allowed evidence of all factors that affect market value. *See id.* Against this long line of precedent, *Ivers* is revealed for what it is—an aberration that was wrongly decided.

¶ 18 We are also convinced that more good than harm will come from overruling *Ivers.* Moreover, the *Ivers* rule is simply unworkable in practice. Using market valuation to measure severance damages is more in line with both constitutional and common sense notions of property value.

■■■ ¶ 19 We hold that when a landowner[2] suffers the physical taking of a portion of his land, he is entitled to severance damages amounting to the full loss of market value in his remaining property caused by the taking. However, we reaffirm our prior rule that when a landowner alleges "damages" not connected to an actual physical taking, the landowner may recover only for damage to protectable property rights.

## I. *IVERS* WAS WRONGLY DECIDED

¶ 20 Under the Fifth Amendment to the United States Constitution, the government may not take private property without providing just compensation. U.S. CONST. amend. V ("[P]rivate property [shall not] be taken for public use, without just compensation."). Under the Utah Constitution, this protection also extends to damage to private property. UTAH CONST. art. I, § 22 ("Private property shall not be taken or damaged for public use without just compensation.").

■■■ ¶ 21 Consistent with the plain language of article I, section 22, this court has interpreted the eminent domain provision of the Utah Constitution as being distinct from, and providing greater protection than, those constitutional provisions that provide compensation only for the "taking" of private property. *See Bingham v. Roosevelt City Corp.,* 2010 UT 37, ¶ 13, 235 P.3d 730 ("[B]ecause the Utah Constitution bounds the ability of the government not only to 'take,' but also to 'damage,' private property, we have characterized this state constitutional provision as being broader than its federal counterpart." (alteration omitted)); *see also Coalter v. Salt Lake City,* 40 Utah 293, 120 P. 851, 853 (1912) ("Consequential damages to property which are caused by making public improvements are recoverable under the Constitution of this state...."). The policy behind Utah's constitutional provision is to ensure that the burden for damage done to private property is "distributed among all the taxpayers" rather than "upon those only who sustained the injury." *Kimball,* 90 P. at 397; *see also Stockdale v. Rio Grande W. Ry. Co.,* 28 Utah 201, 77 P. 849, 852 ("The tendency under our system is too often to sacrifice the individual to the community, and it seems

---

2. While the protections of the Utah Constitution and United States Constitution reach many types of property and encompass constructive and regulatory takings, *see, e.g., Bagford v. Ephraim City,* 904 P.2d 1095, 1098 (Utah 1995), we limit our examination and holding today to takings of real property. We do so for the simple reason that a real property taking is at issue before us. We have not considered, nor have the parties briefed, the considerations applicable to other forms of takings.

very difficult, in reason, to show why the state should not pay for the property of which it destroys or impairs the value, as well as for what it physically takes." (internal quotation marks omitted)).

¶ 22 Consistent with the Utah Constitution's broad takings provision, it is well settled that Utah's constitutional guarantee of just compensation is triggered when there is "any substantial interference with private property which destroys or materially lessens its value, or by which the owner's right to its use and enjoyment is in any substantial degree abridged or destroyed." *Stockdale*, 77 P. at 852.[3] Implicit in this formulation is the requirement that a property owner first demonstrate some "protectable property interest" in the property before the property owner is entitled to damages. *Harold Selman, Inc. v. Box Elder Cnty.*, 2011 UT 18, ¶ 23, 251 P.3d 804 (alteration omitted) (internal quotation marks omitted). This is because a fundamental threshold question in a takings or damages claim is whether the thing taken or damaged qualifies as property. *See Bingham*, 2010 UT 37, ¶ 16, 235 P.3d 730. Thus, "the prohibition on takings found in the Utah Constitution applies only to 'protectable interest[s] in property.'" *Id.* (alteration in original) (quoting *Bagford v. Ephraim City*, 904 P.2d 1095, 1097–98 (Utah 1995)). Stated another way, "a takings claim presents two distinct inquiries: First, the claimant must demonstrate some protectable interest in property. If the claimant possesses a protectable property interest, the claimant must then show that the interest has been taken or damaged by government action." *Harold Selman*, 2011 UT 18, ¶ 23, 251 P.3d 804 (alterations omitted) (internal quotation marks omitted). A claimant who makes this showing is then entitled to "just compensation." UTAH CONST. art. I, § 22.

¶ 23 Neither party challenges this general framework. But UDOT contends that Admiral may not recover for its loss of visibility. UDOT argues that Admiral does not have a constitutionally protected interest in the visibility of its property. "Absent such an interest," according to UDOT, "no taking has occurred under the Utah Constitution."

¶ 24 In support of its argument, the state cites cases in which we have denied the takings claims of parties who have been unable to demonstrate damage to a protectable property interest. Most recently, we denied the claim of a group of landowners who alleged that a nearby city's diversion of water from an aquifer below the landowners' property amounted to a taking. *Bingham*, 2010 UT 37, ¶ 1, 235 P.3d 730. The group of landowners had not lawfully appropriated the water. *Id.* ¶ 30. Thus, "the [g]roup lacked a claim of entitlement to the continued presence of water in its soil," and therefore its interest was not within the protection of the takings clause. *Id.* We also denied the claim of a garbage company that sought damages from Ephraim City for passing an ordinance requiring all city residents to pay for city operated garbage collection. *Bagford*, 904 P.2d at 1096. That claim failed because the company's "business in Ephraim City was based only on the expectation of being able to continue doing business there, not on a legal right to do so." *Id.* at 1100. These claimants simply did not have a property interest that was damaged.

¶ 25 Similarly, we have repeatedly held that a landowner does not have a protectable property interest in a particular flow of traffic past the landowner's business. *See, e.g., Hampton v. State ex rel. Rd. Comm'n*, 21 Utah 2d 342, 445 P.2d 708, 711 (1968) (holding that the right of ingress or egress does not encompass a right "in and to existing public traffic on the highway, or any right to have such traffic pass by one's abutting property" (internal quotation marks omitted)). As a result, a property owner is not entitled to compensation when the construction of a public improvement causes a decreased flow of traffic past his business,

---

**3.** *See, e.g., Bingham*, 2010 UT 37, ¶ 13, 235 P.3d 730 ("When determining whether government action has violated article I, section 22 of the Utah Constitution, we inquire whether there has been 'any substantial interference with private property which destroys or materially lessens its value, or by which the owner's right to its use and enjoyment is in any substantial degree abridged or destroyed.'" (quoting *Colman v. Utah State Land Bd.*, 795 P.2d 622, 626 (Utah 1990))); *Hampton v. State ex rel. Rd. Comm'n*, 21 Utah 2d 342, 445 P.2d 708, 711–12 (1968).

even though the result may be a decrease in the market value of his property.

¶ 26 UDOT argues that these cases foreclose Admiral's claim for severance damages for loss of visibility. But UDOT's argument suffers from a fundamental flaw: In this case, it is undisputed that Admiral did suffer a taking when UDOT took a portion of Admiral's real property. The above cases are inapposite because each concerned the threshold question of whether a landowner could state a takings claim at all—not the amount of compensation due a landowner who has indisputably suffered a physical taking of at least a portion of his property. At issue here, as in *Ivers*, is the question of how to determine the just compensation to which Admiral is entitled.

¶ 27 Under the *Ivers* rule, Admiral is entitled to compensation only for damages to "protectable property rights." As discussed below, this rule can be squared neither with this court's well-established precedent regarding the proper measure of severance damages nor the statutory framework for assessing such damages.

¶ 28 First, *Ivers* contravenes our longstanding precedent holding that constitutional requirements are satisfied only when a property owner is made whole by placing him in the position he would have occupied but for the taking. Once a landowner demonstrates that a protectable property interest "has been taken or damaged by government action," *Harold Selman*, 2011 UT 18, ¶ 23, 251 P.3d 804 (internal quotation marks omitted), the landowner is entitled to "just compensation," UTAH CONST. art. I, § 22. And it is well established that when the requirement of "just compensation" is triggered, the landowner is entitled to compensation "to the extent of the damages suffered." *Stockdale*, 77 P. at 852. This has been interpreted to require " 'that the owners must be put in as good a position money wise as they would have occupied had their property not been taken.' " *City of Hildale v. Cooke*, 2001 UT 56, ¶ 19, 28 P.3d 697 (quoting *State ex rel. Rd. Comm'n v. Noble*, 6 Utah 2d 40, 305 P.2d 495, 497 (1957)); *see also Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 304, 43 S.Ct. 354, 67 L.Ed. 664 (1923) ("[T]he owner shall be put in as good position pecuniarily as he would have been if his property had not been taken."). And "[t]he constitutional requirement of just compensation derives 'as much content from the basic equitable principles of fairness as it does from technical concepts of property law.' " *Utah State Rd. Comm'n v. Friberg*, 687 P.2d 821, 828 (Utah 1984) (quoting *United States v. Fuller*, 409 U.S. 488, 490, 93 S.Ct. 801, 35 L.Ed.2d 16 (1973)). "[T]o be fair and just, [compensation] must reflect the fair value of the land to the landowner." *Id.* Compensation meets this standard of fairness when it makes the landowner financially whole by placing him in the position he would have occupied were his property not taken. *See id.; see also Seaboard*, 261 U.S. at 304, 43 S.Ct. 354.

¶ 29 Under this framework, a landowner who has suffered a physical taking of land is entitled to the market value of the property taken. *S. Pac. Co. v. Arthur*, 10 Utah 2d 306, 352 P.2d 693, 695 (1960) ("The standard of what is 'just compensation' ... is the market value of the property taken...."); *see also United States v. Miller*, 317 U.S. 369, 373–74, 63 S.Ct. 276, 87 L.Ed. 336 (1943) (holding that a landowner whose land is taken in a condemnation proceeding is entitled to the "market value" thereof). In addition, if the government takes only a portion of a tract of land, the landowner is entitled to additional compensation if "the severance of the condemned property, and the use of *that* property, *caused* damage to the remaining property." *Ivers v. Utah Dep't of Transp.*, 2007 UT 19, ¶ 18, 154 P.3d 802. This includes damages caused by an improvement that is "built on property other than that which was condemned" if "the use of the condemned property is essential to the completion of the project as a whole." *Id.* ¶ 21. And this rule applies whether or not the improvement is built upon land abutting the state-owned property. This is because the state's condemnation of land is the "but for cause" of the damage; if the state had not condemned the land, the state would not have been able to complete the project. *See id.*

¶ 30 Where severance damages are appropriate, it falls to the finder of fact to determine the appropriate amount. It is well accepted that the proper measurement of severance damages is determined by comparing the market value of the portion of property not taken with its market value before the taking. *See Cooke,* 2001 UT 56, ¶ 20, 28 P.3d 697 (" 'The cardinal and well-recognized rule as to the measure of damages to property not actually taken but affected by condemnation is the difference in market value of the property before and after the taking.' " (quoting *Salt Lake Cnty. Cottonwood Sanitary Dist. v. Toone,* 11 Utah 2d 232, 357 P.2d 486, 488 (1960))).[4] Other than in *Ivers,* we have never held that a landowner may recover severance compensation only for damages to "protectable property rights." In fact, we have never held that severance damages could properly be measured by anything other than diminution in market value of the remaining property.

¶ 31 Properly determining the fair market value of property requires "that all factors bearing upon such value that any prudent purchaser would take into account … be given consideration."[5] *Weber Basin Water Conservancy Dist. v. Ward,* 347 P.2d 862, 863 (Utah 1959). In over a century, we had never, until *Ivers,* deviated from this approach when considering the measurement of severance damages. *See Farmers New World Life Ins. Co. v. Bountiful City,* 803 P.2d 1241, 1244 (Utah 1990) ("Generally, all unavoidable injuries arising out of the proper construction of a public use which directly affect the market value of the abutting property may be considered in calculating [sever-

4. *See also State v. Harvey Real Estate,* 2002 UT 107, ¶ 11, 57 P.3d 1088 ("[S]everance damages may be made for any diminution in the value of [an owner's non-condemned land], as long as those damages were directly caused by the taking itself and by the condemnor's use of the land taken." (internal quotation marks and emphasis omitted)); *Utah Dep't of Transp. v. Rayco Corp.,* 599 P.2d 481, 490 (Utah 1979) ("The proper measure of severance damages to the remainder is the difference between the fair cash market value before and after the taking."); *Provo City Corp. v. Knudsen,* 558 P.2d 1332, 1334 (Utah 1977) (holding that where Provo City acquired an aerial easement over a landowner's property, the landowner was "entitled to compensation, not only for the market value of the land directly so affected, but also for severance damages resulting for decreasing the market value of the remainder of her land"); *Utah State Rd. Comm'n v. Miya,* 526 P.2d 926, 928 (Utah 1974) ("[W]here a police power is exercised as an incidental result of the exercise of eminent domain, just compensation is due if the market value of the property has been diminished."); *State Rd. Comm'n v. Rohan,* 26 Utah 2d 202, 487 P.2d 857, 860 (1971) (Ellett, J., concurring) (A landowner "should be paid the fair market value of the land taken and for any diminution in the fair market value of the remaining land due to the severance of the part taken and the construction of the improvement. In other words, he should recover for the land taken and for diminution in the fair market value of the remaining land."); *State ex rel. Rd. Comm'n v. Peterson,* 12 Utah 2d 317, 366 P.2d 76, 79 (1961) (holding that the correct measurement of severance damages to the remainder is "the difference between its fair cash market value before and after the taking"); *S. Pac. Co. v. Arthur,* 10 Utah 2d 306, 352 P.2d 693,

695 (1960); *State ex rel. Rd. Comm'n v. Coop. Sec. Corp. Of Church of Jesus Christ of Latter–Day Saints,* 122 Utah 134, 247 P.2d 269, 271 (Utah 1952) ("The compensation to which an owner is entitled for severance damages in condemnation proceedings is the difference in the fair market value of his property before and after the taking."); *State v. Ward,* 112 Utah 452, 189 P.2d 113, 117 (1948) (finding a measure of severance damages appropriate if it "accurately measure[s] the decrease in the market value of the property damaged but not taken"); *Wasatch Gas Co. v. Bouwhuis,* 82 Utah 573, 26 P.2d 548, 553 (1933) (noting that severance damages may be proven by determining "the depreciation, if any, of the market value" of the land not sought to be condemned); *Carpet Barn v. State ex rel. Dep't of Transp.,* 786 P.2d 770, 772–73 (Utah Ct.App. 1990) ("The trial court properly instructed the jury that the measure of severance damages is the difference between the value of the remaining property prior to the taking and the value of the remaining property after the taking.").

5. While a court generally must consider all factors to determine fair market value, there is one narrow exception to this rule. A court may not consider an "enhancement or decrease in value attributable to the purposes for which the property is being condemned." *Redevelopment Agency of Salt Lake City v. Grutter,* 734 P.2d 434, 437 (1986) (emphasis added). This exception reflects our policy that "[t]he owner [of the condemned property] must be put in as good a position money wise as they would have occupied had their property not been taken." *Cooke,* 2001 UT 56, ¶ 19, 28 P.3d 697. The parties have not raised this exception and it is not applicable here.

ance] damages." (emphasis omitted)) [6] Thus, when measuring severance damages, "there should not be any attempt to isolate and appraise as a separate item of damage any loss of value due to noise or any other such intangible factor." *Rohan*, 487 P.2d at 859. Rather, "in order to correctly evaluate the severance damages, i.e., the damage to the remaining property, it is obvious that it should be viewed in the composite as it will be after the taking and after the improvement has been constructed." *Id.*[7]

¶ 32 Not only is the *Ivers* rule inconsistent with constitutional requirements, it also runs afoul of the statutory framework that the legislature has put in place for assessing severance damages. Under that framework, when a landowner has only a portion of his land taken, the landowner is entitled to (1) the value of the property taken and (2) severance compensation for the damages that "accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvement." Utah Code Ann. § 78B–6–511(2) (2008). In cases where the remainder property will be bene-

fitted by the construction of the improvement, the statute requires that the amount of the benefit must be subtracted from the severance compensation. *Id.* § 78B–6–511(4).

¶ 33 This statutory framework measures severance damages as the diminution in market value of the remainder property. Under it, just compensation is calculated by subtracting the benefits to the property from the harm caused "by reason of its severance ... and the construction of the improvement." *Id.* § 78B–6–511(2). But the *Ivers* rule runs afoul of this statutory framework because it would not allow Admiral to place on the "harm" side of the equation all of "the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvement." *Id.* But UDOT is able to subtract any increase in value of the remainder property owing to the improvement, even if such value does not accrue to a "protectable property right." *See id.* § 78B–6–511(4). Thus, the *Ivers* rule contravenes Utah's statutory framework for assessing severance damages.

**6.** *See also Utah Dep't of Transp. v. Jones*, 694 P.2d 1031, 1034 (Utah 1984) (holding that admission of evidence as to drainage damages to remainder property that would be caused by construction of a highway and culvert system on the condemned parcel was admissible as bearing on severance damages); *Rohan*, 487 P.2d at 859 (holding that when determining market value for the purposes of a severance damage calculation, "it is not only permissible but necessary to consider all of the facts and circumstances that a prudent and willing buyer and seller, with knowledge of the facts, would take into account in arriving at its market value," including intangible factors such as increased traffic and noise from new highway); *Provo River Water Users' Ass'n v. Carlson*, 103 Utah 93, 133 P.2d 777, 779–80 (1943) ("All of the cases in this court ... have predicated both severance damages and damages to lands not taken, on some physical injury to lands not condemned, such as lowering or raising the level of a street or highway so as to impair access, obstruction of light and view, restriction of the remaining area in size or shape so as to render it less valuable for purposes to which it was formerly adapted, or the creation of noise, smoke, or some other condition which would operate to depreciate the market value of the property remaining."); *Salt Lake & U.R.R. Co. v. Schramm*, 56 Utah 53, 189 P. 90, 93 (Utah 1920) (noting that the jury may properly "take into consideration the existing business or wants

of the community" when measuring market value (internal quotation marks omitted)); *Jordan v. Utah Ry. Co.*, 47 Utah 519, 156 P. 939, 943 (1916) ("Whatever legitimately affects [the] value [of one's land] may be considered in determining the depreciation or appreciation thereof, but the several elements depreciating the value may not be considered as separate and independent items of damage...."); *Salt Lake & U.R.R. Co. v. Butterfield*, 46 Utah 431, 150 P. 931, 932 (1915) (affirming jury award of severance damage to farm owner based on an increase in "the labor and expense of irrigating the land, in cultivating it, and in raising and harvesting the crops to be grown thereon"); *Morris v. Or. Short Line R.R. Co.*, 36 Utah 14, 102 P. 629, 631 (1909) ("[E]verything which arises out of the proper construction and proper operation of the [public improvement] which directly affects the salable value of the abutting property may ordinarily be considered ... in assessing damages.").

**7.** See also *Twenty–Second Corp. of Church of Jesus Christ of Latter–Day Saints v. Or. Short Line R.R. Co.*, 36 Utah 238, 103 P. 243, 249 (1909) ("[N]oises and similar interferences which may affect the market value of the property not taken are ordinarily permitted to be shown ... as elements to be considered in connection with all other things which may depreciate the market value of the property interfered with but not taken.").

¶ 34 Applying *Ivers* to the facts of this case demonstrates the manner in which it violates both the statute and our constitutional guarantees of just compensation. Admiral purchased both of the parcels after having them appraised for their fair market value, which specifically included the value of the properties' visibility. But under *Ivers,* UDOT could take Admiral's property without paying any compensation for lost visibility. Thus, UDOT would receive a windfall because the value of the properties' visibility would be shifted from Admiral to UDOT without compensation.

■ ¶ 35 We have little trouble concluding that *Ivers* was wrongly decided. Our review of precedent reveals that the constitutionally required measure of severance damages is the diminution in market value of the remainder property. And the statutory framework for assessing severance damages accords with the constitutional requirements. *Ivers* contravenes both.

## II. MORE GOOD THAN HARM WILL COME FROM OVERRULING *IVERS* BECAUSE THE *IVERS* RULE IS UNWORKABLE IN PRACTICE AND USING MARKET VALUE TO MEASURE DAMAGES COMPORTS WITH COMMON SENSE NOTIONS OF PROPERTY VALUE

■ ¶ 36 We have determined that *Ivers* was wrongly decided. Such a determination alone, however, is generally insufficient to justify overruling our precedent. Rather, we must also inquire whether departing from precedent will produce "more good than harm." *ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.,* 2010 UT 65, ¶ 23, 245 P.3d 184 (internal quotation marks omitted). In this case, we are convinced that restoring our pre-*Ivers* precedent satisfies this requirement.

¶ 37 First, the portion of our *Ivers* holding requiring that "protectable property interests" be segregated and separated out from severance damages is unworkable in practice. This is primarily because it is extremely difficult for an appraiser to segregate and apportion market value based on artificial distinctions between protectable and nonprotectable property rights.

¶ 38 This difficulty manifests itself in several ways. First, there is no set of conventions that appraisers can readily apply when they are asked to value a property in reference to its protected and nonprotected property rights. The facts of this case provide a good example. The parcels at issue were appraised several times. Admiral's expert, Jerry Webber, first appraised the parcels in 1994 before Admiral purchased them. In assessing fair market value, Mr. Webber considered all factors customarily taken into account by a willing buyer and seller, including view from and visibility of the property.

¶ 39 Mr. Webber and two other appraisers later conducted additional appraisals to determine the amount of severance damages to which Admiral is entitled. Each appraisal assigned a fair market value to each parcel. To arrive at the fair market value of the parcels, the appraisers considered all factors affecting market value. The appraisers did not assign specific values to any of the numerous factors affecting market value, including any decrease in value due to loss of visibility. In fact, all three appraisers testified that it was impossible to isolate and identify the values associated with loss of view and loss of visibility.

¶ 40 Second, in assessing the value of real property, appraisers routinely locate and analyze sales of "comparable" properties. Generally, a comparable sale is an arm's length transaction between a willing buyer and a willing seller in which the sale price is determined by market forces. In such a sale, the buyer and the seller take into consideration all known factors that affect the value of the property. Information regarding such comparable sales is often readily available. But comparable sales in which the buyer and seller ignore value that can be attributed to categories of certain nonprotectable property rights is simply not available. In fact, Mr. Webber stated in his affidavit that it was "impossible to find" any "comparable sales that would indicate and verify the value of 'view from the property' alone and exclude 'visibility of the same property' from I–15."

¶ 41 These facts demonstrate the unworkability of the *Ivers* rule. Given the extreme difficulty, if not impossibility, of properly apportioning value based on artificial distinctions between protectable and nonprotectable property rights, the *Ivers* rule would also require that appraisers resort to rank speculation when attempting to exclude the loss of visibility from fair market value. Not only is there no factual basis for such speculation, but requiring it would result in an increase in unnecessarily complex, drawn-out litigation involving valuation of partially condemned property. In contrast, using market value as the measure of severance damages is relatively simple and fact-based. Thus, restoring our pre-*Ivers* case law will again allow property to be appraised using accepted, well-developed and uncontroversial appraisal methodologies.

¶ 42 In addition to the unworkability of *Ivers,* using market value to measure severance damages is consistent with common sense notions of property value. The average landowner assumes that the value of his land is equal to the amount that a willing buyer would pay for it. And the average landowner ought to be able to expect that he will be compensated for any reduction in that amount that results if the state takes part of his property. The *Ivers* rule directly undermines this basic concept by asking landowners to recognize an artificial distinction between so-called protectable and nonprotectable property rights.

## CONCLUSION

¶ 43 The *Ivers* rule, which prevents recovery of severance damages for loss of visibility, directly conflicts with both Utah statute and our well-established precedent. It also contravenes our constitutional requirement to provide "just compensation" to those citizens whose property is taken by the state. We therefore conclude that *Ivers* was wrongly decided and overrule the part of that decision that prevents a landowner from recovering severance damages based on the fair market value of his property before and after the taking. In so doing, we restore our long-standing precedent allowing recovery for all damages that are caused by a taking.

When a portion of a landowner's property is taken, he is entitled to put on evidence of all factors that impact the market value of his remaining property. Therefore, we reverse and remand for proceedings consistent with this opinion.

¶ 44 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice NEHRING, and Justice LEE concur in Justice PARRISH's opinion.