*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2015 UT 73**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

SALT LAKE CITY,
*Respondent*,

*v.*

RICARDO ENRIQUE CARRERA,
*Petitioner.*

No. 20130800
Filed August 14, 2015

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Elizabeth Hruby-Mills
No. 111900790

Attorneys:

Padma Veeru-Collings, Steven L. Newton,
Salt Lake, for respondent

Richard G. Sorenson,
Salt Lake, for petitioner

JUSTICE PARRISH authored the opinion of the Court, in which CHIEF
JUSTICE DURRANT, JUSTICE DURHAM, and JUSTICE HIMONAS joined.

ASSOCIATE CHIEF JUSTICE LEE authored a dissenting opinion.

JUSTICE PARRISH, opinion of the Court:

## INTRODUCTION

¶1 On certiorari, Ricardo Enrique Carrera challenges the court
of appeals' ruling affirming his conviction for unlawfully possessing
another's Social Security card. Mr. Carrera asserts that there was
insufficient evidence to support a reasonable inference that he knew

he was not entitled to possess the card. We agree and reverse the court of appeals.

## FACTS

¶2   In December 2010, in response to a call reporting a potential crime, Salt Lake City Police Officer Jonathan Dew began a search of the house where Mr. Carrera rented a room. During his search, Officer Dew identified himself as a police officer and asked Mr. Carrera to come out of his bedroom. After being asked several times, Mr. Carrera finally joined Officer Dew in the living room.

¶3   Upon entering the living room, Mr. Carrera took an aggressive stance against Officer Dew as if preparing to attack him. Believing that Mr. Carrera may assault him, Officer Dew ordered Mr. Carrera several times to sit down. Mr. Carrera ignored him. Because of Mr. Carrera's noncompliant behavior, Officer Dew attempted to place Mr. Carrera in handcuffs. Mr. Carrera pulled away and resisted arrest. Eventually, Mr. Carrera complied with Officer Dew's orders to get on the ground, and Officer Dew handcuffed him.

¶4   Officer Dew placed Mr. Carrera under arrest and then conducted a search incident to that arrest. The search uncovered Mr. Carrera's wallet. Officer Dew searched the wallet and found an unsigned Social Security card bearing the name of a Ms. Alvin. Officer Dew asked Mr. Carrera to whom the card belonged and whether he knew Ms. Alvin. Mr. Carrera responded that he did not know her.

¶5   The State charged Mr. Carrera with interference with an arresting peace officer and unlawful possession of another's identification documents. *See* UTAH CODE § 76-8-305 (interference with arresting officer); *id.* § 76-6-1105(2)(a) (unlawful possession). A jury found Mr. Carrera guilty of both charges, and he timely appealed his conviction for unlawfully possessing another's identifying document. The court of appeals affirmed his conviction, and we granted certiorari. We have jurisdiction pursuant to section 78A-3-102(3)(a) of the Utah Code.

## STANDARD OF REVIEW

¶6   On certiorari, we review the court of appeals' decision for correctness. *Ramsay v. Kane Cnty. Human Res. Special Serv. Dist.*, 2014 UT 5, ¶ 7, 322 P.3d 1163. We do not review "the decision of the trial court." *Id.* (internal quotation marks omitted). In evaluating sufficiency of the evidence claims, "we review the evidence and all

inferences which may reasonably be drawn from it in the light most favorable to the verdict." *State v. Shumway*, 2002 UT 124, ¶ 15, 63 P.3d 94.

## ANALYSIS

¶7    Mr. Carrera argues that there was insufficient evidence for a reasonable jury to decide beyond a reasonable doubt that he knew he was not entitled to possess the Social Security card. The City contends that reasonable inferences drawn from Mr. Carrera's behavior, his admission that he did not know Ms. Alvin, and the location of the card are sufficient to conclude that Mr. Carrera knew he was not entitled to possess the Social Security card. We disagree. We conclude that the City failed to present sufficient evidence to establish Mr. Carrera's mental state and accordingly reverse.

¶8    Mr. Carrera was convicted of unlawfully possessing another's identification document. Under Utah law,

> a person is guilty of [unlawful possession of another's identification document] if he . . . obtains or possesses an identifying document with knowledge that he is not entitled to obtain or possess the identifying document.

UTAH CODE § 76-6-1105(2)(a). Mr. Carrera does not dispute that he possessed the Social Security card. But he argues that the City did not present sufficient evidence to establish the required mens rea—that he knew he was not entitled to possess the Social Security card.

¶9    Before we can determine whether the evidence sufficiently established the mens rea element, we must determine what that element requires. We begin by recognizing that the Legislature did not make mere possession of another's identifying document unlawful. Instead, it requires the City to prove that Mr. Carrera had "knowledge that he [was] not entitled to obtain or possess the identifying document." *Id.* The City's arguments equate entitlement with permission, asserting that because Mr. Carrera did not know the owner of the card he could not have reasonably believed that he was entitled to possess it. Mr. Carrera points to the case of a so-called Good Samaritan who finds a lost Social Security card and picks it up to return it or a police officer who seizes a stolen card for the same reason. Neither the Good Samaritan nor the police officer knows the person to whom the card belongs. They therefore both possess the card without permission from its owner. Although the statute does not provide any liability exception for such circumstances, the Legislature certainly did not intend for either to be subject to prosecution. Accordingly, knowledge that a person is not entitled to

possess a Social Security card requires more than the mere knowledge that the person is holding the card without permission from its owner. It must be knowledge of the absence of permission plus something else. That something else may be an indication that the card was stolen, that the person in possession had kept the card beyond the time in which a reasonable person would have returned it, that the person intended to use or had used the card, or that the card was forged. There are any number of additional pieces of evidence that would distinguish a Good Samaritan or a police officer from an identify thief even though all possess the card without permission.

¶10 Having determined what the mens rea element requires, we turn to the question of whether the evidence was sufficient to meet that requirement in this case. In assessing a claim of insufficiency of the evidence, "we do not examine whether we believe that the evidence at trial established guilt beyond a reasonable doubt." *State v. Holgate*, 2000 UT 74, ¶ 18, 10 P.3d 346. Rather, we will overturn a conviction when "the evidence is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted." *Id.* (internal quotation marks omitted).

¶11 "[I]t is a well-settled rule that circumstantial evidence alone may be sufficient to establish the guilt of the accused." *State v. Nickles*, 728 P.2d 123, 126 (Utah 1986). Circumstantial evidence is particularly useful in establishing intent because direct evidence of intent is rarely available. We allow juries to rely on circumstantial evidence to find intent on the basis of reasonable inferences drawn from the evidence. *See Holgate*, 2000 UT 74, ¶ 21. However, jury verdicts decided on the basis of "remote or speculative possibilities of guilt" are invalid. *State v. Workman*, 852 P.2d 981, 985 (Utah 1993). Mr. Carrera's appeal turns on the distinction between a reasonable inference and speculation.

¶12 This is a difficult distinction for which a bright-light methodology is elusive. An 'inference' is a "conclusion reached by considering other facts and deducing a logical consequence from them." *See* BLACK'S LAW DICTIONARY 847 (9th ed. 2009). On the other hand, 'speculation' is the "act or practice of theorizing about matters over which there is no certain knowledge" at hand. *Id.* at 1529. In short, the difference between an inference and speculation depends on whether the underlying facts support the conclusion. A jury draws a reasonable inference if there is an evidentiary foundation to

draw and support the conclusion. In the case of speculation, however, there is no underlying evidence to support the conclusion. With this distinction in mind, we turn to the evidence in Mr. Carrera's case.

¶13  At trial, the City argued that Mr. Carrera's knowledge may be inferred from the fact that Mr. Carrera did not know Ms. Alvin. The City argued, "It's a reasonable inference and it's a reasonable conclusion that if someone does not know someone, they're not entitled to have anything of the person's ever." And the City contends that on the basis of this evidence, the jury could have reasonably inferred that Mr. Carrera knew that he did not have permission from Ms. Alvin to possess the card. But as we have indicated, Mr. Carrera's lack of permission does not equate to knowledge on his part that he was not entitled to possess the card. Indeed, Officer Dew also possessed the card without permission from Ms. Alvin, yet he is not subject to prosecution. In short, something more—such as evidence suggesting a nefarious intent—is required under the statute. We turn now to the remaining evidence to look for such a suggestion.

¶14 Nothing about the location of the card in Mr. Carrera's wallet provides an indication of a nefarious intent. It is only logical that any person coming into possession of a Social Security card would place it in his wallet for safe keeping regardless of his innocent or malicious intent. Since placing the card in a wallet does not show culpability any more than it shows innocence, it cannot be the basis for a reasonable inference that Mr. Carrera had a nefarious intent.

¶15 Mr. Carrera's behavior towards Officer Dew is likewise inconclusive. The jury may have inferred from Mr. Carrera's hostility and defensiveness that he was feeling guilty. But even assuming that he felt guilty, there is no basis in the evidence for the jury to conclude that his guilt stemmed from his possession of the Social Security card and not something else. Accordingly, this evidence is also insufficient to provide the nefarious intent required by the statute.

¶16  In its brief to the court of appeals, the City also argued that it was reasonable to conclude that "[Mr.] Carrera stole the social security card" because "[Mr.] Carrera did not[,] before or after the social security card was found[,] state how he obtained it, why he was in possession of it, or if he even attempted to contact the police to report it lost." But at no time in its briefing to this court did the

City suggest that we could infer anything from Mr. Carrera's failure to volunteer an innocent explanation for his possession of the card. And we decline to make that leap here.

¶17 In appeals challenging the sufficiency of the evidence, like the one before us, we "review the evidence and *all* inferences which may reasonably be drawn from it." *State v. Ashcraft*, 2015 UT 5, ¶ 18, 349 P.3d 664 (emphasis added) (internal quotation marks omitted). But we also retain discretion over whether to consider issues not raised by the parties. We may, for example, deem an issue forfeited if it is not raised, *see State v. Roberts*, 2015 UT 24, ¶ 20, 345 P.3d 1226, ask the parties for supplemental briefing, *see Utah Dep't of Transp. v. Admiral Beverage Corp.*, 2011 UT 62, ¶ 8, 275 P.3d 208, or decide to reach the issue. In this instance, we decline to request supplemental briefing or to otherwise exercise our discretion to address arguments that the parties never made in order to indulge an inference that the City never sought.

¶18 First, we question whether there is even a fair inference of guilt to be drawn from Mr. Carrera's failure to voluntarily explain why he was in possession of the card. At the time of arrest, Officer Dew asked Mr. Carrera only one very specific question—whether he knew Ms. Alvin. Mr. Carrera answered this question fully. Officer Dew did not ask any follow-up questions. Accordingly, we question whether any inference can be drawn at all from Mr. Carrera's failure to engage Officer Dew in further discussion.

¶19 Second, even could an inference be drawn from Mr. Carrera's silence, we cannot draw such an inference if that inference is constitutionally impermissible, which may well be the case here. Drawing an inference from Mr. Carrera's post-arrest silence implicates serious *Miranda* and due process concerns and may ultimately prove unconstitutional. *See Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (explaining that to find a waiver of *Miranda* rights, the prosecution must show that the defendant "knowingly and voluntarily" waived (internal quotation marks omitted)); *Wainwright v. Greenfield*, 474 U.S. 284, 295 (1986) (recognizing that "*Miranda* warnings contain an implied promise, rooted in the Constitution, that silence will carry no penalty" (internal quotation marks omitted)). And because the City did not ask for an inference to be drawn from what Mr. Carrera did not say post-arrest, neither party

identified or briefed the serious constitutional issues the inference calls into play.[1]

¶20 Third, the record before us is scant, providing minimal insight into the interaction between Mr. Carrera and the officer and silent as to whether Mr. Carrera received his *Miranda* warnings.[2] Thus, supplemental briefing is unlikely to yield much factual clarity in the matter.

---

[1] Contrary to the dissent's position, we do not understand the City's response at oral argument to have affirmatively embraced the inference. During oral argument, the City agreed an inference from silence would raise a Fifth Amendment problem if Mr. Carrera had explicitly invoked his right to remain silent. But in response to the suggestion that the situation here was different because Mr. Carrera answered the officer's question, the City did not weigh in as to whether there was still a constitutional concern. Instead, it shifted focus, asking the court to consider "the totality of the evidence rather than this limited interaction when [Mr. Carrera] was arrested."

[2] At trial and on appeal, the City has consistently presented Mr. Carrera's affirmative statement that he did not know the owner of the Social Security card as evidence of his guilt. Because Mr. Carrera has never argued that Officer Dew failed to properly inform him of his *Miranda* rights, he has forfeited his ability to argue against the use of the affirmative statement. *See State v. Mabe*, 864 P.2d 890, 892 n.6 (Utah 1993) (holding that, absent exceptional circumstances, this court will not consider on appeal an argument of noncompliance with *Miranda* that was not raised in the trial court). But this forfeiture does not extend to Mr. Carrera's silence because the City did not use his silence against him at trial. He therefore had nothing to challenge.

The dissent argues that even though "the prosecution did not affirmatively ask the jury" to draw the inference from silence, "savvy counsel" could have asked for a limiting instruction. *Infra* ¶ 34. But it strikes us as exceedingly poor strategy for defense counsel to use a limiting instruction to highlight for the jury impermissible inferences that were never mentioned at trial. Under the dissent's view, Mr. Carrera's attorney also should have alerted the jury that it could not consider Mr. Carrera's race or his decision not to testify, lest this court, of its own accord, decide to draw such inferences on appeal.

¶21 In short, to consider any inference from what Mr. Carrera did not say would require, for all practical purposes, that we order supplemental briefing. It would be unwise in the extreme for us to venture into this constitutional briar patch without the aid of such briefing. But the evidentiary standard applicable to the review of a verdict does not mandate that we exercise our discretion to order supplemental briefing as to the constitutional implications of an inference that, under the facts presented here, is of questionable validity. And in light of the foregoing considerations, we decline to so order.[3]

¶22 The evidence in this case is insufficient because the City made no effort to show that Mr. Carrera had any nefarious intent.[4] Instead, it based its argument at trial and on appeal on Mr. Carrera's mere possession without permission. In fact, during trial Mr. Carrera's attorney asked Officer Dew "whether [the] card was misused in any way?" and the City objected, stating that because Mr. Carrera "already said he didn't know who [Ms. Alvin] was," "it wouldn't matter if [the card] had been used unlawfully or not." Such reliance on simple possession without permission was a tactical mistake on the part of the City that now leaves this court with insufficient evidence on which to sustain the conviction.

## CONCLUSION

¶23 This is a close case. Nevertheless the evidence falls short when viewed separately or in the totality. We therefore reverse the court of appeals and overturn Mr. Carrera's conviction for unlawful possession of another's identification document.

---

[3] Though we decline to consider the inference, we express no opinion as to the ultimate merits of its constitutional permissibility. We leave that decision for another day, when we have the benefit of argument and briefing by the parties.

[4] Almost any effort on this front could have revealed additional evidence sufficient to sustain the conviction. Hypothetically, the City may have been able to discover that the card had been reported stolen two months prior or that it was found among stolen goods also belonging to Ms. Alvin. Or perhaps that Mr. Carrera had used the card to obtain employment. Or maybe that Ms. Alvin lives outside of Utah, that she is a child, or that she is deceased. Any one of these facts would have provided a basis for the jury to conclude that Mr. Carrera possessed the card with nefarious intent.

¶24 We reverse the conviction of Mr. Carrera for the unlawful possession of another person's identification document. The evidence presented to the jury was insufficient to sustain a reasonable inference that Mr. Carrera knew he was not entitled to possess the Social Security card.

_____

ASSOCIATE CHIEF JUSTICE LEE, dissenting:

¶25 Ricardo Carrera was convicted of unlawfully possessing another person's Social Security card. In reviewing the verdict, we are not asked to reevaluate Carrera's guilt, just to decide whether the jury had sufficient evidence to find him guilty. In doing so, we "review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict." *State v. Petree*, 659 P.2d 443, 445 (Utah 1983); *see also State v. Nielsen*, 2014 UT 10, ¶ 30, 326 P.3d 645. And if these inferences "have a basis in logic and reasonable human experience sufficient to prove that [the defendant] possessed the requisite intent," we must affirm. *State v. Maestas*, 2012 UT 46, ¶ 179, 299 P.3d 892 (alteration in original) (internal quotation marks omitted). In reviewing the evidence, in other words, we not only make "all inferences which may reasonably be drawn from it"; we are also supposed to "stretch the evidentiary fabric as far as it will go" in favor of the verdict. *Petree*, 659 P.2d at 445.

¶26 The majority overrides this standard in its analysis. It declines to entertain an inference that was raised at oral argument in our court and embraced there by the City[1]—an inference from

_____

[1] Our decision shouldn't turn on this point for reasons explained below. But the oral argument transcript is clear. When counsel for the City was asked whether Carrera's answer to police opened the door to an inference against him, counsel answered in the affirmative. And during oral argument both sides debated the viability of such an inference. The majority is right that the City did not "weigh in" in any detail on the extent of any constitutional problems with an inference from a partial answer to police questioning. *Supra* ¶ 19 n.1. But there is no doubt that the City "affirmatively embraced the inference." *Supra* ¶ 19 n.1. Thus, counsel's analysis invited the court to consider "'the totality of the evidence rather than this limited interaction'" between Carrera and

(continued ...)

Carrera's statement to police that he did not know the person whose name appeared on the Social Security card in question, without any further explanation about why he possessed a card belonging to a stranger. That inference, if permitted, is significant. It is at least arguable that an innocent person in Carrera's circumstance would have answered more than just "no" to the question whether he knew the person in question—he would likely have tried to explain why he had the card. And a reasonable jury, if it thought about this point, could conclude that the lack of a further explanation suggested that there was none—and thus that Carrera knew he was not entitled to possess the card in question.[2]

¶27 The majority refuses to "indulge" this inference. *Supra* ¶ 17. It does so on two grounds: (a) its purported "discretion" to ignore evidentiary inferences "not raised by the parties" in their briefs, *supra* ¶ 17; and (b) a "concern[]" that such an inference "may well" raise constitutional problems, *supra* ¶ 19. Neither point is persuasive.

¶28 I find no support in our caselaw or elsewhere for the notion of appellate discretion to ignore a fair inference from the evidence in the record—even one not briefed by the parties. Our longstanding precedent cuts strongly the other way. The standard of review that we have articulated conveys respect for and deference to the jury's assessment of the evidence. We reverse for insufficiency "only when

---

the officer, *supra* ¶ 19 n.1, but that "totality" expressly encompassed the inference in question.

[2] The majority questions whether "a fair inference of guilt" can be drawn from Mr. Carrera's limited response. *Supra* ¶ 18. But surely an innocent person would have been more *likely* to say more – or, more specifically, a reasonable jury could infer that an innocent person in his circumstance would likely do so.

The applicable standard is far more deferential than the majority's application of it. It directs us to sustain the jury's verdict if any inference *could* "reasonably" be drawn from the "evidentiary fabric" of the case (stretched "as far as it will go"), *State v. Petree*, 659 P.2d 443, 445 (Utah 1983);, and informed by any "basis in logic and reasonable human experience," *State v. Maestas*, 2012 UT 46, ¶ 179, 299 P.3d 892.

the evidence . . . is sufficiently inconclusive or inherently improbable . . . that reasonable minds *must have entertained* a reasonable doubt that the defendant committed the crime for which he or she was convicted." *Maestas*, 2012 UT 46, ¶ 177 (emphasis added) (internal quotation marks omitted). "We cannot disturb the jury's conclusion just because it *could have* reasonably come to a different one." *State v. Ashcraft*, 2015 UT 5, ¶ 30, 349 P.3d 664.

¶29 The logic of that standard forecloses the majority's notion of discretionary power to ignore a reasonable inference that is apparent from the record but not expressly advanced in the briefs. We rely on adversarial briefing. Certainly. But we are also supposed to engage our minds and our own analysis. If there is an inference that logically flows from the evidence in the record, we cannot properly say that "reasonable minds must have" rejected it. *Maestas*, 2012 UT 46, ¶ 177.

¶30 The governing standard of review tells us not to substitute our judgment for that of the jury. Surely that also means that appellate counsel's judgment (in presenting or not presenting a particular inference for our consideration) is likewise no substitute. The basis for the verdict must be in "logic and reasonable human experience" as applied to the evidence, *id.* ¶ 179 (quoting *State v. Holgate*, 2000 UT 74, ¶ 21, 10 P.3d 346), not in arguments from counsel. We ignore the operative standard—and undermine the dignity of the jury verdict in our system of justice—in asserting the contrary power in this case.

¶31 The majority's cases, *supra* ¶ 17, are not to the contrary. Neither *State v. Roberts*, 2015 UT 24, ¶ 20, 345 P.3d 1226, nor *Utah Department of Transportation v. Admiral Beverage Corp.*, 2011 UT 62, ¶ 8, 275 P.3d 208, addresses the standard of review of a jury verdict on sufficiency of the evidence grounds. The point raised in these cases, moreover, is beside the point here. I agree that "an issue" is "forfeited if it is not raised." *Supra* ¶ 17. But the *issue* here is one we are reaching—sufficiency of the evidence to support the jury verdict. And we must address that issue by yielding all reasonable inferences (even those not advocated in the briefs) to support the jury verdict. A jury is not asked to anticipate what arguments may be raised on appeal. It is expected to bring to bear its full range of "logic and reasonable human experience" in rendering inferences which can reasonably and logically be drawn. *Maestas*, 2012 UT 46, ¶ 179

(quoting *Holgate,* 2000 UT 74, ¶ 21). We undermine that responsibility if we set aside a verdict despite an inference that occurs to us but was not briefed by appellate counsel.

¶32 That leaves the question whether there is a constitutional barrier to the inference from Carrera's truncated answer to the police. The majority does not give an answer to that question. And it counsels against "ventur[ing] into this constitutional briar patch" in this case. *Supra* ¶ 21. That seems wise given that the constitutional issues identified by the majority were never raised by Carrera and have not been briefed by the parties.

¶33 The constitutionality of the inference in question is a matter that Carrera had a chance to raise at various points in the proceedings leading to our decision. His various failures to raise this matter at least arguably resulted in forfeiture of this argument.

¶34 The first such opportunity was at trial. I see no way to know whether "the City . . . use[d] [Carrera's] silence against him at trial." *Supra* ¶ 20 n.2. It appears to be true that the prosecution did not affirmatively ask the jury to draw an inference from Carrera's silence. But that does not at all mean that the jury never made such an inference. And savvy counsel could certainly have moved for a limiting instruction (reminding the jury of Carrera's right to remain silent, or in other words not to volunteer information to the police).

¶35 Trial, moreover, was not the only opportunity that Carrera had. Clearly the City did advocate the inference in question in the court of appeals. *See supra* ¶ 16. And Carrera's counsel raised no constitutional objection in those proceedings.

¶36 Finally, although it is true that the City's briefing in our court failed to mention the inference in question, it was a matter addressed at length in oral argument. *See supra* ¶ 26. Again, if Carrera's counsel saw a constitutional problem (a problem that was vaguely alluded to but not analyzed in any detail or by reference to any controlling authority), counsel could easily have sought leave to file a supplemental brief.

¶37 The majority is right that "we cannot draw . . . an inference if that inference is constitutionally impermissible." *Supra* ¶ 19. But the court is not so concluding. It is only saying that there "may well be" constitutional problems here—that there are "*Miranda* and due process concerns" that "may ultimately" stand in the way of an

inference from Carrera's partial answer to the police. *Supra* ¶ 19. The phrasing is significant. Given the lack of briefing and the difficulty of the issues, the court is not rejecting the inference in question on constitutional grounds. It is expressly declining to do so. After all, a constitutional "concern[]" is only a *question*, and the notion that there "may well be" constitutional problems is the same thing as saying that there "may not be." *Supra* ¶ 19.

¶38 In all events, we have means for answering questions not adequately answered in the parties' briefs. We can (and should) order supplemental briefing. Sometimes such orders even resolve factual questions that seem unanswered on a "scant" record. *Supra* ¶ 20. In *State v. Fuller*, 2014 UT 29, ¶ 16, 332 P.3d 937, for example, we ordered supplemental briefing when we noticed that an arrest warrant of significance to our analysis did not seem to appear in the record. And the response we received included a stipulation from the parties. *See id*. I see no reason to assume that we would get no such help in this case. If the court is truly concerned about the constitutional question it identifies, it should order supplemental briefing. Once we get the briefing we will then be equipped to determine whether such inference is "constitutionally permissible." *Supra* ¶ 19.

¶39 Unless and until we do so, we should not confuse the analysis by identifying a concern we are unwilling to resolve. We can't have it both ways. Either we address the constitutional problem or we set it aside. It makes no sense to identify constitutional "concerns" if we are unwilling to dive into the analysis necessary to resolve them.

¶40 The constitutional issues in this case are at least deserving of supplemental briefing. To know whether the inference in question would raise a Fifth Amendment problem, we would need answers to two sets of important questions: (a) whether an inference from a partial answer to a police question in these circumstances would implicate the Fifth Amendment; and (b) whether Carrera may have forfeited any Fifth Amendment concern in this case (i) by answering the officer's question after a *Miranda* warning was read (if it was, and we can't tell from this record), (ii) by failing to raise an objection at trial, or (iii) by failing to raise an argument in the court of appeals.

¶41  None of these issues were briefed. So we are in no position to dispose of the case on the basis of our concerns about a potential Fifth Amendment problem.

¶42  I respectfully dissent for these reasons. I see no room in our standard of review for ignoring the inference that the majority rejects. And the constitutional issues the court raises merit further analysis after supplemental briefing.

––––––––––––